David W. Bruhin, Harry W. Kingham and George Nagorny, Plaintiffs, *v.* Commonwealth of Pennsylvania, Jacob Kassab, Secretary of the Department of Transportation, Maurice K. Goddard, Secretary of the Department of Environmental Resources, Defendants, and Township of Springfield, Intervening Defendant.

Argued December 5, 1973, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Charles G. Nistico,* with him, of counsel, *Edward F. Muller, Jr.,* for plaintiffs.

*Gregory S. Ghen,* Assistant Attorney General, with him *David A. Johnston, Jr.,* Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General, and *Israel Packel,* Attorney General, for defendant, Kassab.

*John P. Krill, Jr.,* Special Assistant Attorney General, for defendant, Goddard.

*Howard Saul Marcu,* for intervening defendant.

OPINION BY JUDGE BLATT, June 13, 1974:

This action in equity has been instituted by three individuals (plaintiffs) who purportedly represent a class composed of persons estimated to be approximately 350 in number, and living in close proximity to the proposed Springfield Mall. The defendants are Jacob G. Kassab, the Secretary of Transportation (Kassab) and Maurice K. Goddard, the Secretary of Environmental Resources (Goddard). The Township of Springfield (Township) was permitted to intervene as a defendant.

This case has essentially grown out of the proposed construction of the Springfield Mall and the issuance by the Department of Transportation (DOT) to

Springfield Associates (Associates), the developers of the Mall, of Highway Occupancy Permit No. P177064, which authorizes the Associates to: "Install curb, sidewalk, acceleration lanes, deceleration lanes, traffic signals and divisors on Baltimore Pike (L. R. Bo) and Sproul Road (L. R. 225). Permittee responsible for all restoration to State Specifications (408) revised 1970."

The plaintiffs instituted this action seeking a mandatory injunction requiring the revocation of the above permit, the holding of public hearings by DOT to consider the environmental impact of the modifications authorized by the permit and requiring Kassab to prohibit Associates from modifying or altering Baltimore Pike and Sproul Road for the purpose of access or otherwise until final adjudication of this action. The plaintiffs' complaint contains five counts,[1] which are essentially as follows: (1) Kassab has failed to follow Section 2002(b) of The Administrative Code of 1929, Act of April 9, 1929, P. L. 177, added by the Act of May 6, 1970, P. L. 356, 71 P.S. §512(b), by failing to hold a public hearing on the environmental impact of the proposed widening and other modifications of Baltimore Pike and Sproul Road authorized by the permit; (2) Kassab has violated Section 2002(a)(15) of The Administrative Code of 1929, 71 P.S. §512(a)(15), by failing to consult with appropriate officials prior to issuing the permit; (3) Kassab has failed to follow the appropriate DOT regulations when issuing the permit; (4) Goddard has the primary responsibility for enforcing Article I, Section 27 of the Constitution of 1968, and thus the duty here to require the DOT to hold a public hearing pursuant to Section 2002(b);

---

[1] By order of President Judge BOWMAN, the plaintiffs were permitted to amend their original complaint so as to add the fifth count.

and (5) the DOT plans to accept a gift of real estate from the Associates for widening portions of Baltimore Pike and Sproul Road, in violation of Section 513 of The Administrative Code of 1929, 71 P.S. §193.

Following hearings, the plaintiffs' motion for a preliminary injunction was denied, and the matter is now before us on preliminary objections. Both of the original defendants and the intervening defendant have filed preliminary objections, which essentially consisted of: (1) the allegation of a failure to join a necessary party, the Associates; (2) a demurrer, alleging a failure to set forth a cause of action against both Kassab and Goddard; (3) the allegation of the pendency of a former action;[2] (4) a lack of conformity to the rules pertaining to class actions; and (5) the inclusion of impertinent matter.

In considering this matter, we must, of course, note that preliminary objections admit as true all facts which are well and clearly pleaded, as well as all inferences reasonably deducible therefrom, but not the pleader's conclusions or averments of law. *Reardon v. Wilbur*, 441 Pa. 551, 272 A. 2d 888 (1971); *Commonwealth ex rel. Powell v. Aytch*, 10 Pa. Commonwealth Ct. 218, 309 A. 2d 734 (1973).

As to the propriety of bringing this action in equity, moreover, the judicial power to interfere in cases challenging the discretionary acts of public officials is quite limited. There is, in fact, a presumption that their actions are within the limits of their discretion. *Downing v. Erie City School District*, 360 Pa. 29, 61 A. 2d 133 (1948). Courts of equity, however, do have

---

[2] Prior to filing this action in equity, the plaintiffs filed in this Court an action in mandamus asking much the same relief. That case was disposed of on preliminary objections in *Bruhin v. Kassab and Goddard*, 12 Pa. Commonwealth Ct. 455, 320 A. 2d 907 (1974).

the power to prevent or restrain the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals. And equity will intervene to restrain acts of officials which are contrary to positive law or amount to bad faith or constitute a violation of public duty. *Rankin v. Chester-Upland School District*, 11 Pa. Commonwealth Ct. 232, 312 A. 2d 605 (1973).

Keeping the above precepts in mind, we must sustain the preliminary objections to the first and second counts because the plaintiffs have failed to state therein a cause of action. The gravamen of these counts is that Kassab failed to consult with appropriate officials as required by Section 2002(a)(15) and also failed to follow the procedures outlined in Section 2002 (b). The former section provides, in pertinent part:

"The Department of Transportation in accord with appropriations made by the General Assembly, and grants of funds from Federal, State, regional, local or private agencies, shall have the power, and its duty shall be:

. . . .

"(15) To consult with appropriate officials as designated by the chief administrative officer of the Department of Environmental Resources, the Department of Community Affairs, the Department of Health, State Planning Board and the Fish Commission regarding the environmental hazards and the conservation, sanitary, recreation and social considerations that may arise by reason of the location, design, construction or reconstruction of any *transportation or air facility.*" (Emphasis added.)

It is provided in Section 2002(b), *inter alia*: "(b) Upon the submission of the preliminary plan or design to the Department of Transportation for any *transportation route or program* requiring the acquisition of new or additional right-of-way, the Department of

Transportation except in cases involving complaint proceedings under the jurisdiction of the Public Utility Commission shall have the power and its duty shall be to follow the hearing procedures now or hereafter required by the Federal Government for Federal-aid transportation programs. . . ." (Emphasis added.) It would seem clear that the widening and improving of a section of Baltimore Pike and Sproul Road to permit access to and from the proposed Springfield Mall would not constitute an activity regarding a "transportation or air facility." As to the term "transportation route or program," we have previously stated: "[W]e cannot hold that the Legislature intended the term, 'transportation route or program,' to include *every* instance where the Secretary has the power to condemn. Such an interpretation would cause substantial delays in every highway project while doing little to further the purpose of the legislation." (Emphasis in original.) *Cowell v. Commonwealth,* 6 Pa. Commonwealth Ct. 574, 577, 297 A. 2d 529, 531 (1972). As in *Cowell, supra,* we believe that this proposed project would not constitute a "transportation route or program" which would necessitate invoking the procedures of Section 2002(b). *See Bruhin, supra.*

Similarly as to the fourth count, we hold that the plaintiffs have failed to state a cause of action upon which relief can be granted. As noted above, Section 2002(a)(15) and (b) are not applicable here and it is unnecessary, therefore, to determine whether or not Goddard has an obligation to enforce their provisions, as the plaintiffs contend. It has also been alleged, however, that Goddard has the primary responsibility of enforcing Article I, Section 27 of the Pennsylvania Constitution of 1968, and that this responsibility includes the duty to monitor the plans and activities of the various agencies and departments of the Commonwealth. This constitutional provision provides: "The

people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, *the Commonwealth* shall conserve and maintain them for the benefit of all the people." (Emphasis added.) We have held, of course, that the above section is self-executing, *Payne v. Kassab,* 11 Pa. Commonwealth Ct. 14, 312 A. 2d 86 (1973), but we can find no authority, either statutory or judicial, which would permit us to hold that the Secretary of the Department of Environmental Resources has the primary responsibility of seeing to its enforcement. This does not mean, of course, that he will never represent the Commonwealth in seeing that it is enforced, but this is not a primary responsibility or duty which we believe he should be obligated to undertake at the behest of a mandatory injunction.

As to the third count, the plaintiffs allege that Kassab is in violation of the DOT's Driveway Regulations, specifically in that he has failed to hold a hearing, that he has granted the permit before complete plans were submitted and has issued the permit without making a professional engineering study of the impact of the number of vehicles which will use the access, and that this will result in rendering the adjacent portions of the Baltimore Pike and Sproul Road extremely dangerous and hazardous.

We believe that this count cannot stand. The manner of enforcement of these regulations is largely a matter of official discretion, but in any case we cannot find that they require a hearing or the submission of detailed plans prior to the issuance of a permit. If, as the plaintiffs allege, the proposed access roads will be in violation of the regulations and the standards set forth therein, we believe that the proper remedy

is as set out in Section 110 of the regulations, recourse to the penalty provisions of Sections 411 and 420 of the State Highway Law, Act of June 1, 1945, P. L. 1242, 36 P.S. §§670-411 and 670-420.

In their fifth count, the plaintiffs allege that the Associates have agreed to donate certain lands which will be used for the right of way of those portions of Baltimore Pike and Sproul Road which will be widened pursuant to the permit, allegedly in violation of Section 513 of The Administrative Code of 1929, 71 P.S. §193, which provides, *inter alia*: "The Department of Property and Supplies, with the approval of the Governor, may accept for educational purposes on behalf of the Commonwealth real estate, or any interest in real estate, by deed, gift or devise, upon investigation and approval of the title thereto by the Department of Justice, and *except as otherwise in this act expressly provided, a department, board, or commission, shall not accept any gift of real estate, or of any interest in real estate, without specific authority from the General Assembly so to do.*" (Emphasis added.) The plaintiffs base their allegation on a letter from Kassab dated February 27, 1973, which states, in part: "This is not a Department project requiring the acquisition of right-of-way for a transportation project. It involves simply an application for a driveway permit whereunder the applicant agrees to donate certain lands for highway purposes." Even if we accept as true (as we must) the assertion that the Associates plan to donate, and that the Department of Transportation plans to accept, certain land to be used for highway purposes, we believe that this issue has been raised prematurely. There is no allegation that any attempt has been made to carry out this plan or that the Legislature will not act to approve it prior to its consummation.

In any case, however, the validity of the fifth count is immaterial in view of the fact that the plaintiffs have failed to join an indispensable party. "[A]ll persons who have a material interest in the controversy or litigation or in the subject matter and all parties whose interests will be affected or determined in the proceedings must be made parties thereto. . . ." *Potteiger v. Fidelity-Philadelphia Trust Company*, 424 Pa. 418, 425, 227 A. 2d 864, 869 (1967). "[A] party in an equity action is indispensable when his interest in the proceeding is of such a nature that a final decree cannot be made without affecting his interest or leaving the controversy in such a condition that a final determination may be wholly inconsistent with equity and good conscience." *Legman v. Scranton School District*, 432 Pa. 342, 346, 247 A. 2d 566, 569 (1968). *See Oas v. Commonwealth*, 8 Pa. Commonwealth Ct. 118, 301 A. 2d 93 (1973). "[T]he absence of an indispensable party goes absolutely to the jurisdiction of the court and without his presence the court can grant no relief. . . . The rule as to indispensable parties is neither technical nor one of convenience; it goes to the jurisdiction. . . ." *Hepler v. Fetterhoff*, 77 Dauph. 112, 115 (1961). *See Powell v. Shepard*, 381 Pa. 405, 113 A. 2d 261 (1955).

Here we believe that the Associates were an indispensable party and the failure to include them was fatal as a matter of jurisdiction. Obviously they would be the party which would be most adversely affected by the revocation of the permit. Any form of relief fashioned in the plaintiffs' favor would clearly and directly affect the right of the Associates to proceed with their construction pursuant to the permit. An order directed to the grantor of the permit without including the grantee would create an impossible situation. *Cf. Dorney Park Coaster Co. v. Stoudt & Son*, 48 Pa. D. & C. 2d 539 (1970).

Because of our disposition of the above matters, it is not necessary for us to consider here the additional objections raised by the defendants. We, therefore, issue the following

## ORDER

Now, June 13, 1974, for the above reasons, we hereby dismiss the complaint filed herein.