Charles D. Snelling, individual, et al., Petitioners
*v.* Department of Transportation of Pennsylvania
et al., Respondents.

Argued September 9, 1976, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers and Blatt. Judge Kramer did not participate.

*Dennis W. Alexander,* with him *John E. Roberts, Armin Feldman,* and *Roberts, Traud and Wallitsch,* for petitioners.

*Bernard Chanin,* with him *Howard Gittis, Herman C. Fala,* and *Wolf, Block, Schorr and Solis-Cohen,* for respondent, Lehigh Valley Associates.

*Robert H. Raymond, Jr.,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for State respondents.

Opinion by Judge Crumlish, Jr., December 2, 1976:

This matter comes before us on preliminary objections to an Amended Petition for Review.[1] The Petitioners are: Charles D. Snelling; Allentown-Lehigh County Chamber of Commerce; the City of Allentown; Paul M. Burke; Nestor's Sporting Goods, Inc.; and Rhoda E. Royer. The Respondents are: the Commonwealth of Pennsylvania, Department of Transportation (PennDOT); William H. Sherlock, Secretary of PennDOT (Secretary); and Lehigh Valley Associates (Lehigh Valley).[2]

The Amended Petition for Review challenges PennDOT's issuance of highway occupancy permits to Lehigh Valley for the construction of certain highway improvements.

We will briefly summarize the complex background of this controversy.

During the year 1966 plans were announced for the development of a shopping mall in Whitehall Township, Lehigh County. The mall was to be called the Lehigh Valley Mall (Mall). The road which is the subject of this controversy is Pennsylvania Route 145, also known as MacArthur Road. This road is the western boundary of the Mall site. Another shopping center, known as Whitehall Mall, is located just north of the Mall along MacArthur Road.

At some time prior to 1970, PennDOT and Whitehall Township developed a plan to widen MacArthur Road. Public hearings were held on the proposed im-

---

[1] Petitioners' initial application for preliminary injunctive relief was withdrawn by agreement of counsel and leave was granted Petitioners to amend their original petition for review prior to oral argument on Respondents' preliminary objections.

[2] Although Respondent Lehigh Valley Associates has joined PennDOT in filing preliminary objections, they are named in the Amended Petition for Review merely because of their status as an indispensable party. No relief is sought by Petitioners against Lehigh Valley Associates.

provements which included construction of a medial barrier along the portion of the road which was to be widened. The then owner of the Mall site proposed a plan to build a tunnel under the improved portion of MacArthur Road which was adjacent to the Mall. The tunnel was to be used by traffic exiting from the Mall. The tunnel plan was approved by Whitehall Township and PennDOT. Petitioners allege that all of the expert reports and studies available to PennDOT at that time recommended the tunnel as the most desirable solution to the anticipated traffic problem. Although the medial strip and the tunnel have been built, the service ramp system necessary for the tunnel's use has not.

In December, 1972, Lehigh Valley acquired the Mall site. Whitehall Township then engaged a traffic consulting firm which rejected the tunnel idea and recommended instead that an opening be cut in the medial barrier at the Mall with left-turn lanes and traffic signals. Petitioners claim that this report is not only unsupported by any of the scientific data, but that it also ignores persuasive data suggesting more desirable alternative solutions. Additionally, Petitioners claim that the plans had not been recommended by PennDOT's own engineers. However, in January, 1975, then Secretary of PennDOT, Jacob Kassab, issued permits for construction of the opening in the medial barrier.

The plan to install an opening in the medial barrier included several other improvements in the vicinity such as the installation of traffic signals at several points along MacArthur Road, the modification of existing traffic signals on nearby roads, and the widening of a road intersecting MacArthur Road at the south boundary of the Mall. Petitioners have alleged that all of these plans are based upon faulty data.

The plans to widen MacArthur Road will require the acquisition of additional right-of-way which Penn-DOT has refused to acquire by condemnation. Instead, the right-of-way will be acquired by Lehigh Valley through private purchase.

Petitioners raise four legal arguments in support of their position. *First,* the Secretary erred in failing to hold hearings as required by Section 2002(b) of the Administrative Code,[3] prior to issuance of the highway occupancy permits. *Second,* the Secretary's decision to implement the plan for opening the medial barrier was unsupported by any rational evidence and was, therefore, an act of bad faith and an abuse of discretion. *Third,* the Secretary has failed to meet his duty as trustee of the public natural resources under Article I, Section 27 of the Pennsylvania Constitution by approving a plan which is potentially harmful to the environment without considering alternative schemes which would reduce environmental incursions. *Fourth,* the present plan was conceived solely for the benefit of a private party, *i.e.,* the developer, Lehigh Valley, and therefore creates an arbitrary and unreasonable discrimination by favoring the Mall with a traffic control program uniquely suited to its needs.

Initially, we note that in ruling upon preliminary objections, we must accept as true all well and clearly pleaded facts, *Metropolitan Hospital v. Dept. of Public Welfare,* 21 Pa. Commonwealth Ct. 116, 343 A.2d 695 (1975); *Johnston v. Board of Probation and Parole,* 20 Pa. Commonwealth Ct. 69, 339 A.2d 835 (1975), but not conclusions or averments of law. *Firing v. Kephart,* 18 Pa. Commonwealth Ct. 578, 336 A.2d 470 (1975). Since the preliminary objections of both respondents are similar, we will consolidate them for the purpose of adjudication.

---

[3] Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §512(b).

*Standing*

Respondents have challenged the standing of each petitioner to bring the instant action.

In ruling upon the standing of the City of Allentown to seek relief against PennDOT, we must be guided by the well-settled principle of municipal corporation law that a municipality is merely a creature of the sovereign created for the purpose of carrying out local governmental functions. *Philadelphia v. Fox*, 69 Pa. 169 (1870). In *Commonwealth of Pennsylvania, Dept. of Environmental Resources v. Borough of Carlisle*, 16 Pa. Commonwealth Ct. 341, 330 A.2d 293 (1974), we applied this principle to an appeal by the Borough of Carlisle from an order of the Department of Environmental Resources concerning upgrading the Borough's sewage facilities. We held that the Borough had no standing to assert the claims of individual property owners against the Department. In this case, Petitioners have alleged that the citizens of Allentown may suffer serious bodily harm from auto accidents caused by poor traffic control while traveling into and out of Allentown. It is also alleged that Allentown's citizens will breathe into their lungs polluted air from the increased vehicular emissions. We must conclude that these allegations, even if true, are insufficient to give Allentown standing to seek relief against the Commonwealth in light of the holdings in *Fox* and *Borough of Carlisle, supra.*

We turn next to the standing of Petitioners, Allentown-Lehigh County Chamber of Commerce and Nestor's Sporting Goods. These Petitioners claim standing by virtue of their status as merchants in the vicinity of the Mall who will suffer pecuniary loss because existing and potential customers will be deterred from traveling along MacArthur Road to reach their businesses.

In *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh,* Pa. , 346 A.2d 269 (1975), our Supreme Court summarized the tests applicable to the standing issue:

The established formulation of what is necessary to render a person 'aggrieved' by an order or other action, which originated in Lansdowne Board of Adjustment's Appeal, 313 Pa. 523, 525, 170 A. 867, 868 (1934), appeared most recently in Man O'War Racing Association, Inc. v. State Horse Racing Commission, 433 Pa. 432, 441, 250 A.2d 172, 176-77 (1969):

'[The party] must have a *direct* interest in the subject-matter of the particular litigation, otherwise he can have no standing to appeal. And not only must the party desiring to appeal have a direct interest in the particular question litigated, but his interest must be immediate and pecuniary, and not a remote consequence of the judgment. The interest must also be substantial.' Keystone Raceway Corp. v. State Harness Racing Commission, 405 Pa. 1, 7-8, 173 A.2d 97, 100 (1961). (Emphasis added.) 346 A.2d at 280.

Clarifying this concept of an "aggrieved" person, the Court stated:

The core concept, of course, is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge. In particular, it is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law.

It is the latter principle which lies behind the traditional formulation's requirement that the would-be 'aggrieved' party must have an interest which is *'pecuniary'* and *'substantial.'* Thus, for

example, it is clear that some interests will suffice to confer standing even though they are neither pecuniary nor readily translatable into pecuniary terms. 346 A.2d at 280-81. (Footnotes omitted.) (Emphasis added.)

In defining the terms "substantial" and "direct," the Court stated:

Thus, the requirement of a 'substantial' interest simply means that the individual's interest must have substance—there must be some *discernible* adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law. The requirement that the interest be 'pecuniary,' which may once have had independent significance, no longer adds anything to the requirement of an interest having substance, as defined above.

The requirement that an interest be 'direct' simply means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains. 346 A.2d at 282. (Footnote omitted.) (Emphasis added.)

The Court then noted the final elements of the test:

The remaining requirements of the traditional formulation of the standing test are that the interest be 'immediate' and 'not a remote consequence of the judgment.' As in the case of 'substantial' and 'pecuniary,' these two requirements reflect a single concern. Here that concern is with the nature of the causal connection between the action complained of and the injury to the person challenging it.

Generalization about the degree of causal connection required to confer standing is more difficult than generalization about the other requirements discussed above. However, it is clear that

the possibility that an interest will suffice to confer standing grows less as the causal connection grows more remote.

It is also clear that standing will be found more readily where protection of the type of interest asserted is among the policies underlying the legal rule relied upon by the person claiming to be 'aggrieved.' 346 A.2d at 283-84. (Citations omitted.)

It is clear to us that the interests of Allentown-Lehigh County Chamber of Commerce and Nestor's Sporting Goods, Inc., are insufficient to confer standing upon them under the *Wm. Penn Parking Garage* guidelines since they are neither direct nor immediate but, rather, highly speculative at best.

Finally, we consider the standing of the individual petitioners.[4] Their claims for standing are based upon their status as commuters who utilize MacArthur Road in and around Lehigh County and as residents of the townships surrounding the road project. The potential harms alleged are the increased probability that they will become involved in an auto accident and breathe contaminated air into their lungs. We must hold that these allegations are insufficient to confer standing upon these petitioners to challenge Penn-DOT's grant of a highway occupancy permit.

Although our holding on the standing issue would itself be sufficient to dismiss the instant petition, we shall nevertheless proceed to examine the remaining legal issues raised by the preliminary objections in the event that a higher court concludes that we have incorrectly determined the standing issue.

### *Applicability of Section 2002(b) of the Administrative Code*

Petitioners contend that PennDOT should have held public hearings prior to approving the opening

---

[4] Charles D. Snelling; Rhoda E. Royer; Paul M. Burke.

of the medial barrier in MacArthur Road. They rely upon Section 2002(b) of the Administrative Code,[5] which provides:

> (b) Upon the submission of the preliminary plan or design to the Department of Transportation for any *transportation route or program requiring the acquisition of new or additional right-of-way,* the Department of Transportation . . . shall have the power and its duty shall be to follow the hearing procedures now or hereafter required by the Federal Government for Federal-aid transportation programs pursuant to Titles 23 and 49 of the United States Code as amended and the regulations and procedures thereunder even though the transportation route or program does not contemplate the use of or actually employ Federal funds. (Emphasis added.)

Petitioners contend that the MacArthur Road project and the accompanying improvements constitute a "transportation route or program requiring the acquisition of new or additional right-of-way."

In *Bruhin v. Commonwealth of Pennsylvania,* 14 Pa. Commonwealth Ct. 300, 320 A.2d 907 (1974), we held that the term "transportation route or program" in Section 2002(b) was not intended by the legislature to include every instance where the Secretary of PennDOT has power to condemn and declined to impose its hearing requirements upon PennDOT for a project involving the widening and improving of a road to provide access to a mall. The facts in *Bruhin* are strikingly similar to those in this case with the exception that here PennDOT has expanded the main project, *i.e.,* the improvement of MacArthur Road, to include installation or modification of traffic signals

---

[5] Act of April 9, 1929, P.L. 177, added by Act of May 6, 1970, P.L. 356, 71 P.S. §512(b).

at certain locations on adjacent feeder roads and the widening of an intersecting road. In our view, however, the holding in *Bruhin* controls this case.

Finally, we note that there was no condemnation or acquisition by PennDOT of any additional right-of-way for the project. Instead, whatever additional right-of-way must be acquired will be purchased by the developer. Therefore, we hold that Petitioners have failed to state a cause of action under Section 2002(b) of the Administrative Code.

### *Abuse of Discretion*

Petitioners contend that the Secretary of PennDOT has abused his discretion in approving the plans for the improvements to MacArthur Road. Their allegations consist mainly of speculation that there will be severe adverse consequences of the currently-proposed program such as increased traffic, increased probability of traffic accidents, and air pollution from increased auto emissions. The alleged abuse of discretion consists of the Secretary failing to fully consider alternate schemes. Petitioners allege that certain reports of traffic engineers should have been disregarded by the Secretary in favor of others. In our view, the decision to accept the reports of one traffic engineering firm over another or even over PennDOT's staff of engineers, is within the sound discretion of the Secretary. It is well settled that discretionary actions of public officials may only be reviewed upon a showing of fraud, bad faith, capricious action, or abuse of discretion. *Hyam v. Upper Montgomery Joint Authority*, 399 Pa. 446, 160 A.2d 539 (1960). There is also a presumption that the actions of public officials are within the limits of their discretion. *Gabriel v. Trinity School District*, 22 Pa. Commonwealth Ct. 620, 350 A.2d 203 (1976); *Dept. of Transportation v. Mitchell's Structural Steel Painting Co.*, 18 Pa. Com-

monwealth Ct. 591, 336 A.2d 913 (1975); *Bruhin v. Commonwealth of Pennsylvania, supra.* In this case, Petitioners have alleged, in conclusionary and speculative terms, certain predicted consequences of the Secretary's action. However, they have failed to allege any *facts* which, if true, would justify judicial intervention where the Secretary has merely chosen one plan among several alternatives. *See Larrecq v. Van Orden,* 21 Pa. Commonwealth Ct. 623, 346 A.2d 922 (1975).

### Sovereign Immunity

Respondents contend that sovereign immunity bars Petitioners' Amended Petition for Review insofar as it seeks to compel the Secretary to perform an affirmative act, *i.e.,* revoke highway occupancy permits already issued.

In *Philadelphia Life Insurance Co. v. Commonwealth,* 410 Pa. 571, 190 A.2d 111 (1963), our Supreme Court held that suits which seek to compel *affirmative action* on the part of state officials or which seek money damages or the recovery of property from the Commonwealth are within the immunity rule. 410 Pa. at 576, 190 A.2d at 114. In *Philadelphia Life Insurance Co., supra,* certain insurance companies filed a complaint in equity against the Commonwealth's Secretary of Revenue to have the insurance premium tax statute declared unconstitutional and to restrain collection of the tax by the Commonwealth. The Court pointed out that actions in equity seeking to prevent enforcement of statutes alleged to be unconstitutional which name as defendants individual officers of the Commonwealth (*e.g.,* the Secretary of Revenue, the Auditor General, and the Attorney General) are not actions against the "Commonwealth" and are therefore not within the immunity rule even though the Commonwealth may also be named in the caption of

the complaint. 410 Pa. at 576, 190 A.2d at 113. Therefore, the mere fact that PennDOT is named as a respondent does not automatically invoke the immunity rule. However, this case does not involve a challenge to the constitutionality of a statute. Instead, affirmative relief is sought against an officer of the Commonwealth who is alleged to have abused his discretion. Therefore, sovereign immunity is a bar to that portion of the Amended Petition for Review which seeks to compel the Secretary to revoke previously-issued highway occupancy permits.

### Petitioners' Rights Under Article I, Section 27 of The Pennsylvania Constitution

Finally, we must consider whether Petitioners have stated a cause of action under Article I, Section 27 of the Pennsylvania Constitution which grants to the people of the Commonwealth the right to a pure environment and names the Commonwealth as trustee of the public natural resources charged with the duty of conserving and maintaining them for the benefit of the people.

Petitioners have alleged that the existing plan for widening MacArthur Road will cause massive traffic jams thereby leading to greater vehicular emissions in the Mall area. Petitioners have combined their Article I, Section 27 allegations into their general contention that the Secretary rejected more desirable alternative schemes for handling Mall traffic ingress and egress. Therefore, they contend that the Secretary failed to perform his affirmative duties to minimize the adverse environmental impact by adopting the existing plan which is alleged by Petitioners to be unsupported by the engineering studies. Although we have held that sovereign immunity does not bar a cause of action under Article I, Section 27, we hold that the instant Petition for Review fails to state a

cause of action thereunder sufficient to withstand preliminary objections in the nature of a demurrer.

In *Commonwealth v. National Gettysburg Battlefield Tower, Inc.,* 8 Pa. Commonwealth Ct. 231, 302 A. 2d 886 (1973), *aff'd* 454 Pa. 193, 311 A.2d 588 (1973), we observed that:

> [I]t is difficult to conceive of any human activity that does not in some degree impair the natural, scenic and esthetic values of any environment.

8 Pa. Commonwealth Ct. at 249, 302 A.2d at 895.
We may take judicial notice of the fact that the opening of the Mall will lead to increased vehicular traffic in the vicinity. This, in turn, will necessarily lead to increased vehicular emission no matter which plan is ultimately adopted for the ingress and egress of cars onto MacArthur Road.

In *Payne v. Kassab,* 11 Pa. Commonwealth Ct. 14, 312 A.2d 86 (1973), *aff'd* Pa. , 361 A.2d 263 (1976), we announced the test to be applied when weighing conflicting environmental and social concerns vis-a-vis projects falling under Article I, Section 27 scrutiny:

> The Court's role must be to test the decision under review by a threefold standard: (1) Was there compliance with all applicable statutes and regulations relevant to the protection of the Commonwealth's public natural resources? (2) Does the record demonstrate a reasonable effort to reduce the environmental incursion to a minimum? (3) Does the environmental harm which will result from the challenged decision or action so clearly outweigh the benefits to be derived therefrom that to proceed further would be an abuse of discretion?

11 Pa. Commonwealth Ct. at 29-30, 312 A.2d at 94.

We have already concluded that this project was not within the ambit of Section 2002(b) of the Administrative Code, 71 P.S. §512(b). Therefore, the numerous environmental factors listed in Section 2002 (b) for the Secretary's consideration are not mandatory in this case. Article I, Section 27 does not require consideration of factors beyond those which, by statute, must be considered in evaluating projects which are potentially harmful to the environment. *See Commonwealth of Pennsylvania, Dept. of Environmental Resources v. Precision Tube Co., Inc.*, 24 Pa. Commonwealth Ct. 647, 358 A.2d 137 (1976).

Nor are there any facts averred from which we may infer that the opening of the medial barrier in MacArthur Road as currently proposed will result in substantially more or less vehicular emissions than any other traffic plan. Petitioners must be mindful that it is the Mall, and not the road improvement program, which will create the additional vehicular traffic in the area. Although Petitioners allege, in purely speculative terms, that massive traffic jams will follow the implementation of the current plans, we are not told that there were any alternative plans which would have resulted in such a substantially less vehicular emission problem that the approval of the current plans are a clear abuse of discretion.

Therefore, even though we must be reluctant to dismiss Petitioners' claims upon preliminary objections absent a fully developed record, we must nevertheless conclude that Petitioners have failed to state a cause of action under Article I, Section 27.

Accordingly, we

### Order

And Now, this 2nd day of December, 1976, the preliminary objections of Respondents, Pennsylvania Department of Transportation and Lehigh Valley Associates, are hereby sustained and the Amended Petition for Review is hereby dismissed.