Strasburg Associates, Petitioner *v.* Newlin Township, Respondent.

Argued March 13, 1980, before President Judge CRUMLISH and Judges ROGERS and CRAIG, sitting as a panel of three.

*Thomas A. Riley, Jr.*, with him *John C. Snyder;* of counsel, *Lentz, Riley, Cantor, Kilgore and Massey, Ltd.*, for petitioner.

*Bruce S. Katcher*, with him *Joseph M. Manko;* of counsel, *Wolf, Block, Schorr & Solis-Cohen*, and *Keith Welks*, Assistant Attorney General, for respondent.

516

OPINION BY PRESIDENT JUDGE CRUMLISH, July 2, 1980:

This appeal by Strasburg Associates (Strasburg)[1] concerns an adjudication and order of the Environmental Hearing Board (EHB) which sustained in part and dismissed in part the challenges to a sanitary landfill permit in Newlin Township, Chester County. Since the Township lacks standing to litigate the issue, we must reverse.

On August 15, 1975, the Department of Environmental Resources (DER) awarded a sanitary landfill permit for 22 acres of a 300-acre site owned by Strasburg in Newlin and West Bradford Townships, Chester County, Pennsylvania. Zoning disputes, groundwater problems, and erosion control measures halted construction of the landfill, for reasons material to this litigation, through October of 1978. Financing problems then forced Strasburg to enter investment negotiations with a three-corporation investment group, whereby a joint venture known as Strasburg Landfill Associates (SLA)[2] would purchase the 300-acre tract, lease it back to Strasburg, and enter into an agreement with Strasburg to manage the presently permitted landfill. However, in late August of 1978, DER notified Strasburg and SLA that the proposed joint venture would constitute a change of ownership requiring a transfer of the permit in accordance with

---

[1] Strasburg is a joint venture consisting of two Pennsylvania limited partnerships known as Strasburg Associates I and Strasburg Associates II, both founded in December of 1973 with business conducted solely in that form by Earle Hart, Alex Barry and James Hart, all limited and general partners.

[2] Strasburg Landfill Associates is a joint venture consisting of Pennsylvania's Newlin Corporation, owned equally by David Ehrlich and Richard Winn, Pennsylvania's Eco-Waste, Inc., owned by Earle and Marion Hart, and Virginia's Somerset Strippers of Virginia, Inc., a subsidiary of a company controlled by Robert Buckley.

DER Regulation, Section 75.22(f).[3] Accordingly, Strasburg and SLA submitted a Termination Agreement for this Landfill Lease-Management contract for DER's approval. DER's response letter, dated September 8, 1978, which accepts the Agreement's terms, put into motion the present litigation. The letter acknowledges receipt and approves prior-submitted modifications and specifications to the overall landfill plans for incorporation in the activated permit and its subsequent implementation. The revisions included a timetable for leachate storage tank installation, provisions for an access road to the leachate sump, and the installation of specific liner subdrains and a groundwater monitoring system. The letter also served as notice of the necessity for immediate corrective plans to correct secondary access road erosion on the site.

In the meantime, Strasburg, SLA, the American Bank, and the Chester County Industrial Development

---

[3] DER Regulation Section 75.22(f), 25 Pa. Code §75.22(f), provides:

(f) Reissuance of permits. Reissuance of permits shall be in accordance with the following:

(1) Permits are not transferrable or assignable.

(2) If a change of ownership occurs, the new owner must submit the following:

(i) An application for a revised permit on a form to be provided by the Department.

(ii) A notarized statement attesting to the following items:

(A) Verification of possession of all approved plans, maps, documents, schedules, and commitments approved by the Department.

(B) Statement of agreement and intent to comply with all the requirements, plans, stipulations, and commitments previously approved by the Department.

(iii) A clear and cogent narrative indicating the scheduling and procedure to be utilized in the transfer of ownership and subsequent operational intent.

Authority (CCIDA) were negotiating a commitment and mortgage financing project for the purchase and construction of the landfill on the tract. On October 11, 1978, the final agreements were executed, the tract was sold to CCIDA, resold by installment sale to SLA, financed by an American Bank mortgage, and leased to Strasburg. DER then reviewed these transactions in November of 1978 and concluded there had been no change of ownership which required a reissuance of the permit under Section 75.22(f).

On October 9, 1978, Newlin Township appealed, contending that DER erred in its September 8th approval of landfill operations by SLA without the reissuance of a permit, and abused its discretion by approving the revisions and failing to condition continued landfilling on the soil and erosion control plan for the secondary access road. DER and Strasburg, the intervenor below, moved to dismiss the appeal for lack of EHB jurisdiction arguing that the September 8th letter did not constitute an appealable action, and that the Township lacked standing to bring the appeal as a party aggrieved by DER action.

Asserting jurisdiction, the EHB found the Township had standing to prosecute the appeal, concluding that it had an interest in protecting surface and groundwaters within its own borders and the municipality could be called upon as a last resort to remedy threats to the public health, welfare, or safety that might be created within its jurisdiction. The order, dated February 16, 1979, dismissed the appeal as it related to DER's approval of revisions to the permitted plans and failure to require adequate erosion and sedimentation measures, and sustained the appeal by requiring compliance with Regulation Section 75.22 (f)'s "change of ownership" provision and more complete documentation of offsite leachate treatment arrangements before operations could begin.

Strasburg now challenges the EHB's latter determinations on a variety of issues ranging from jurisdiction and standing to supportive substantial evidence and underlying constitutionality for the Section 75.22(f) violation. However, the determinative question for Strasburg's appeal is whether the EHB erred in finding that Newlin Township had standing or was "aggrieved" with respect to either the Section 75.22 (f) change of ownership or the off-site leachate treatment issues.[4] We will deal with each accordingly.

The basic principles of standing are enumerated by our Supreme Court in *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). To prevail on the standing issue, the "adversely affected" or "aggrieved" party must have an interest in the subject matter or particular question litigated which is substantial, immediate, and direct. The interest is "substantial" when there is "some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law." *Wm. Penn, supra* at 195, 346 A.2d at 282. The requirement that the interest be "direct" goes to causation in that "the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains." *Wm. Penn, supra*. The interest must also be "immediate" and not a remote consequence of the judgment, the concern being focused on the nature and proximity of the action and injury challenged to the person challenging it. *Wm. Penn, supra* at 197, 346 A.2d at 269.

This Court has dutifully obeyed these instructions in a number of cases where there have been interests

---

[4] We see no problem with the EHB's exercise of jurisdiction over the subject action by DER, which effectively authorizes re-activation of Strasburg's permit, and commencement of construction and operation of the landfill.

analogous to those present here. In *Snelling v. Department of Transportation,* 27 Pa. Commonwealth Ct. 276, 366 A.2d 1298 (1976), the City of Allentown challenged the Department's issuance of a highway occupancy permit to a private building for proposed road modifications in the area of a shopping mall. The City alleged that its citizens would suffer serious bodily harm from motor vehicle accidents caused by the area's poor traffic control and air pollution from the increased vehicular emissions. This Court found that the City lacked standing to assert the rights or claims of individual property owners against the Department in light of the municipality's purpose to merely carry out local government functions. *See also The Concerned Citizens of Greater West Chester v. Larson,* 48 Pa. Commonwealth Ct. 241, 409 A.2d 511 (1980), and *Department of Environmental Resources v. Borough of Carlisle,* 16 Pa. Commonwealth Ct. 341, 330 A.2d 293 (1974).

In this context, we first examine the Township's standing to challenge DER's determination on "transfer of ownership" as approved by the EHB. The Township relies upon the EHB's finding of financial and operational responsibility:

Although this case presents a close question under the Commonwealth Court decisions, we believe that municipalities should have the right to appeal to this board where they are dissatisfied with a DER action that could prospectively affect their municipal responsibilities to a significant degree, and we will not abandon the board's practice by denying a right of appeal in this case.

. . . .

Similarly, the question of who owns the permit and operates the landfill is important to a mu-

nicipality because of the consequence of poor or inadequate management or of an insufficient financial commitment. In our view, a municipality may be more directly affected by an unlawful grant of a solid waste permit by DER than individual citizens, since it is the municipality rather than individual residents that could be called upon as a last resort to remedy any threat to the public health, welfare or safety that might be created within its jurisdiction.

The Township further claims that the defacto transfer and DER's unwillingness to elicit all facts as to ownership and operation, such as its owners and operators, their experience, financial credibility, and operational intentions, has aggrieved the Township above and beyond the premature and wrongful approval of the substantive modifications.

Upon careful review of these interests and counsel's supporting arguments, we find no reasonable grounds for standing when interests are not "substantial, direct or immediate." The interests are without foundation in case law or statutes. They are neither supported by the Pennsylvania Solid Waste Management Act, Act of July 31, 1968, P.L. 788, *as amended,* 35 P.S. §§6001 et seq., which provides municipalities with responsibility over only its own facilities and not those privately owned or controlled, nor Article I, Section 27 of the Pennsylvania Constitution, which merely espouses the people's right to clean air, pure water, and the preservation of their environment by the Commonwealth as trustee for these resources. To the contrary, DER is vested with these powers and duties in the public interest. *See* 71 P.S. §510-1(15), Act of December 3, 1970, P.L. 834, and *Ryan Appeal,* 30 Pa. Commonwealth Ct. 180, 373 A.2d 475 (1977). The record clearly reveals that the transactions and partici-

pants challenged by the Township were subjected to intense scrutiny by DER for just these reasons, and passed inspection. Consequently, the Township failed to show that the injury, if any, has either adversely affected its municipal purpose in carrying out local government functions or acted in some way to affect rights or claims of individual property owners against the Department in which the Township would act as trustee. *See Snelling v. Department of Transportation, supra,* and *The Concerned Citizens of Greater West Chester v. Larson, supra.*

Further, we can find no reasonable grounds for standing where interests or injuries are hypothetical in nature. *See Snelling, supra,* and *The Concerned Citizens of Greater West Chester, supra.* To approve of the Township's alleged interest only if and when poor management or insufficient financial commitment from ownership results in economic trouble would extend the principles of standing to speculation, far beyond the intent of our Supreme Court in *Wm. Penn, supra.* This we are unwilling to do.

The second issue presents us with a broader standing question—Did the EHB err by allowing the Township to challenge DER's decision on off-site leachate collection and treatment? The Township asserts a host of claims in an effort to show that its direct, immediate, and substantial interests are threatened by the improper design, construction, and operation of the landfill. Most are directed toward such alleged interests as the protection of surface and groundwater resources for residential, commercial, and industrial uses, avoiding the creation of nuisances, and assuring land use compliance with local land use planning. However, standing must again be denied. We cannot extend standing to a Township with the purported interest of protecting the health, safety and general welfare of its citizens without its having met the requisite

tests.[5] The Township has failed to show how DER's actions have adversely affected its municipal functions directly, immediately or substantially.

Accordingly, we

### ORDER

AND Now, this 2nd day of July, 1980, the order of the Environmental Hearing Board, dated February 16, 1979, is hereby reversed insofar as it requires reissuance of an operating permit for Strasburg Landfill in accordance with 25 Pa. Code §75.22(f), and the submission of more complete documentation of its arrangements for off-site leachate treatment in conformity with 25 Pa. Code §75.25(o)(7).

---

[5] Although we acknowledge such federal cases as *Township of Ridley v. Blanchette*, 421 F. Supp. 435 (E.D. Pa. 1976), for the "standing" proposition that Townships shoulder the responsibility for protecting the health, safety, and general welfare of its citizens, they are distinguishable in that they require the protected interest to be arguably within the zone of interests regulated by federal statutes.