## North Penn Water Authority v. Zoning Hearing Board of Worcester Township

*A. Subers*, for plaintiff.

*Jerome Nulty*, for Zoning Hearing Board.

*Joseph M. Manko,* Special Counsel for Worcester Twp.

SCIRICA, *J.*, April 6, 1981—On July 21, 1978, appellant, North Penn Water Authority applied for a special exception, building permit and a use and occupancy permit from Worcester Township, Montgomery County, to construct a ten foot by ten foot pumphouse on a small tract of land leased from Philadelphia Electric Company and to use a well previously dug for public water supply. The tract is zoned for agricultural purposes, with other uses permitted by special exception.

Appellant contended that it was entitled to a special exception because the construction and use of its pumphouse and well constituted either a "municipal use" or "utility use" under §§301-B.B.3 and 301-B.B.4 of the Township Ordinance.

On July 26, 1978, the Delaware River Basin Commission approved appellant's pumphouse and well project as part of its comprehensive plan, and on August 4, 1978, the Pennsylvania Department of Environmental Resources issued appellant a water supply permit to operate the pumphouse and well.

Worcester Township denied the requests for a special exception and building and use and occupancy permits, and appeals were taken to the Zoning Hearing Board of Worcester Township. After 15 hearings between August 22, 1978 and March 18, 1980, the zoning hearing board, on May 27, 1980, denied the appeals. This appeal was filed on June 12, 1980. Appellant alleges that the decision of the zoning hearing board was arbitrary, capricious, contrary to law, contrary to the facts and an abuse of discretion.

## BACKGROUND

A special exception is a conditional use which is permitted only if certain predetermined standards are met: City of Pittsburgh v. Herman, 7 Pa. Commonwealth Ct. 243, 298 A. 2d 624 (1973). The zoning ordinance of Worcester Township provides for the following uses when authorized as a special exception:

Section 301-B. . .

B.3. Passenger station for public transportation, telephone central office, and *other public utility use directly related to and necessary for services within the township.* (Emphasis added.)

B.4 Municipal Use.

The Zoning Ordinance of Worcester Township sets forth the standards for special exception:

Section 1802. Standard for Zoning Hearing Board actions.

In any instance where the Zoning Hearing Board is required to consider any of those matters itemized in § 1801, in accordance with the provisions of this Ordinance, the Board shall, among other things:

A. Consider the suitability of the property for the use desired. Assure itself that the proposed changes are consistent with the spirit, purpose and intent of the Zoning Ordinance.

B. Determine that the proposed change will not substantially injure or detract from the use of neighborhood property or from the character of the neighborhood and that use of the property adjacent to the area included in the proposed change of plan is adequately safeguarded.

C. Determine that the proposed change would serve the best interest of the township, the conve-

nience of the community (where applicable) and the public welfare.

D. Consider the effect of the proposed change upon the logical efficient and economical extension at public services and facilities such as public water, sewers, police and fire protection and public schools.

E. Determine that any sewage or waste resulting from the proposed use will and can be satisfactorily disposed of, and if such use is to be disposed of on an on-lot basis, the size of the lot and nature of the soil are such as will insure satisfactory sanitary subsurface disposal.

F. Consider the effect of the proposed change or improvement in creating any run-off, water or drainage problem that might be injurious to adjacent or nearby properties or create an expense for the township.

• • •

I. Impose such conditions, in addition to those required, as are necessary to assure that the intent of the Zoning Ordinance is complied with, which conditions may include but are not limited to, harmonious design of buildings, planning and its maintenance as a site or soundscreen and minimizing the noxious, offensive, or hazardous elements, adequate standards of parking and sanitation.

## SCOPE OF REVIEW

In this case, the scope of review is limited to whether the board committed an error of law or abused its discretion: Dewald v. Board of Adjustment, City of Pittsburgh, 13 Pa. Commonwealth Ct. 303, 320 A. 2d 922 (1974); Campbell v. Zoning Hearing Board of Plymouth Township, 10 Pa. Commonwealth Ct. 251, 310 A. 2d 444 (1973).

Once an applicant for a special exception proves that the proposed use is permitted by the zoning

ordinance, he is entitled to the special exception, unless the requested use would be detrimental to the public health, safety or welfare: Evans v. Zoning Hearing Board of Easttown Township, 40 Pa. Commonwealth Ct. 103, 396 A. 2d 899 (1979).

In reviewing the record, the court finds that appellant has met all of the terms and conditions required for a special exception. The appellees have failed to establish that the proposed use would adversely affect the health, safety or welfare of the community.

## UTILITY USE

All parties admit that appellant's use is a utility use. The issue is whether such use is "directly related to and necessary for services within the Township" as provided in §301-B-B.3.[1]

The zoning hearing board found in the negative. This finding was in error.

The record shows that appellant, North Penn Water Authority, presently serves residents in Worcester Township and also, residents in other boroughs and townships. The well in question is the only well dug by appellant in the township.

In reaching its decision, the zoning hearing board concluded that appellant's use was not "directly" related to services within the township because appellant serviced other municipalities. In its opinion, the zoning hearing board said:

. . . we interpret the word "directly" to mean totally, with no deviations, and not merely partially. Opinion of Zoning Hearing Board, p. 20.

The interpretation of the zoning hearing board is

---

1. §301-B. . .

B.3. Passenger station for public transportation, telephone central office, and other public utility use directly related to and necessary for services within the township.

incorrect. Not only does the word "directly" not mean "totally," but the fair interpretation of §301-B-B.3 of the ordinance does not require that all services of any utility exist and operate exclusively for and within the township.

The creation of the North Penn Water Authority under the Municipality Authorities Act, 53 P.S. §301 et seq. by seven municipalities, including Worcester Township, indicates that each member municipality intended that the services of the North Penn Water Authority would accommodate a geographical area broader than the bounds of any one township or borough. The court finds that the well and pumphouse of the North Penn Water Authority is directly related to services within Worcester Township.

Appellant also contends that the installation of the pumphouse is "necessary for services within the Township," citing testimony that some wells within the township have become polluted and the need for alternative water supply. The court finds that the proposed use is necessary for services within the township.

## MUNICIPAL USE

The term "municipal use" which appears in §301-B-B.4 is not defined in the Zoning Ordinance of Worcester Township. As noted in its opinion, the zoning hearing board searched the ordinance and the Municipalities Planning Code for some provision that might be helpful in defining the phrase. Finding none, the zoning hearing board decided that the phrase "municipal use" describes the ordinary, routine and necessary functions of Worcester Township. In other words, the term "municipal use" is limited to uses exercised by the township.

The court finds the interpretation of the zoning hearing board incorrect. Despite the findings of the zoning hearing board, the Zoning Ordinance of Worcester Township is helpful in interpreting the meaning of the term "municipal use."

Under § 1609 of the Zoning Ordinance, the construction and uses of buildings and facilities for municipal purposes by Worcester Township are clearly excluded from the operation of the ordinance.[2]

The phrase "municipal use" therefore, set forth as a special exception in § 301-B.B.4, is clearly intended for those municipal uses not provided by the township.[3]

For these reasons, the court finds that the proposed use is a municipal use within the terms of the Zoning Ordinance of Worcester Township.

## EFFECT ON PUBLIC HEALTH, SAFETY AND WELFARE

Appellant has shown that it complies with the ordinance and, therefore, is entitled to a special exception unless the use would be detrimental to public health, safety and welfare.[4]

---

2. "The provisions of this Ordinance shall not apply to land owned by the Township, nor to the construction and uses of buildings and facilities for municipal purposes by the Township and their maintenance. . . " Worcester Township Ordinance § 1609.

3. See Township of Hatfield v. Lansdale Municipal Authority, 403 Pa. 113, 168 A. 2d 333 (1961), which affirmed the judicial notice taken by a lower court of the "municipal function and service" performed by an authority seeking to show a municipal use under a zoning ordinance.

4. A number of court decisions in this Commonwealth have placed on the objectors the burden of showing the proposal to be detrimental to public health, safety and welfare: Borden

After reviewing the record, the court finds that the township has not shown any damage to the public health, safety or welfare.

The township also alleged that the operation of the well would have a detrimental effect upon the ground water streams in the township. There was no evidence presented that any private well or stream would be affected or had been affected since the well had been in operation.[5] In fact, the testimony indicated that the health, safety and welfare of the township would be enhanced by the project, since fire hydrants would provide the fire company with more water, and in the event of further well contamination, the residents of the township could connect with North Penn Water Authority lines.

## PREEMPTION BY DELAWARE RIVER BASIN COMMISSION AND DEPARTMENT OF ENVIRONMENTAL RESOURCES

The allocation of water resources in Worcester Township is under the joint authority of the Delaware River Basin Commission and the Department of Environmental Resources.

The Department of Environmental Resources is empowered to preserve public health and the purity of the waters of the state,[6] and has exclusive juris-

Appeal, 369 Pa. 517, 87 A. 2d 465 (1952); Root v. The Erie Zoning Board of Appeals, 180 Pa. Superior Ct. 38, 118 A. 2d 297 (1955); Zoning Hearing Board v. Konyk, 5 Pa. Commonwealth Ct. 466, 290 A. 2d 715 (1972).

5. The zoning hearing board found that Worcester Township has no ordinance which requires any sort of permit in order to drill a well, and had none when appellant drilled the subject well in 1975. (Findings of Fact No. 12)

6. ". . . be responsible for development and implementation of *comprehensive* public water supply, waste management and other water quality plans." 35 P.S. §691.5(2) (Emphasis added.)

diction to issue permits for public water supply within the Commonwealth of Pennsylvania.[7]

The Delaware River Basin Commission was created by the Commonwealth of Pennsylvania, and the states of New Jersey, Delaware and New York in order to:

. . . provide for the planning, conservation, utilization, development, management and control of the water resources of the Basin: 32 P.S. §815.101, Art. 1, §1.3 [e]

In addition, the Delaware River Basin Compact (32 P.S. §815.101 et seq.) states that one of the purposes of the Commission is to provide for the:

. . . conservation and development of ground and surface water supply for municipal and agricultural use: 32 P.S. §815.101, Part 1, §1.

These two agencies have the exclusive power to allocate water and regulate the use of water for the public good.

Appellant obtained permits from both the Delaware River Basin Commission and the Department of Environmental Resources allowing it to withdraw up to 100,000 gallons of water per day. Worcester Township, through its Zoning Ordinance or zoning hearing board, may not overturn these permits, nor render them ineffective. The zoning hearing board is not the proper forum to challenge any actions taken by the Delaware River Basin Commission or the Department of Environmental Resources concerning the authority to regulate, control, prevent or permit the withdrawal of ground water.

The legislature invested these bodies with authority to formulate and oversee comprehensive water resource management. The purpose of the Delaware River Basin Commission compact and one of

---

7. Admin. Code §1918-A(1), 71 Pa. C.S.A. §510-18(1)

the purposes of the creation of the Department of Environmental Resources, was to coordinate and unify the procedures for water use within the region and the Commonwealth, rather than to have each state or municipality within the Commonwealth pursue its own plan for water resource management. To allow each municipality to pursue its own plan would subject the allocation of the Commonwealth's precious water resources to the control of hundreds of local officials and boards.

The courts have been sensitive to the need for the comprehensive approach by the Department of Environmental Resources. In, In re: Appeal of Klock, 51 Pa. Commonwealth Ct. 641, 415 A. 2d 705 (1980), the Commonwealth Court reversed a zoning hearing board decision that denied a variance to allow the installation of a private sewage treatment plant, after the landowner had obtained the necessary permits of the Department of Environmental Resources. In that case, the zoning hearing board refused a variance on the grounds that the plant might emit odors, and that the owner might default in financial support of the plant operation and the township would then have to assume that financial responsibility. The court, in reversing, stated:

. . . we must conclude that the Board here exceeded its jurisdiction by, in effect, collaterally attacking the approvals made or to be made by the authorities who have jurisdiction over the treatment plant in its health and operational aspects; . . . it is not for the Zoning Board to enforce the technical engineering regulations of the environmental agencies even though the Board may be convinced that an approval might have been improvidently granted. Id: at 797.

In another recent case, the Commonwealth Court held that a township has no standing in an appeal to

the Environmental Hearing Board from the grant of a Department of Environmental Resources permit for a privately owned landfill: Strasburg Associates v. Newlin Township, 52 Pa. Commonwealth Ct. 514, 415 A. 2d 1014 (1980). The court held that the Department of Environmental Resources is vested with the power to issue permits for landfills in the public interest, and that the Department of Environmental Resources had carefully scrutinized the application of the operator. Furthermore, the court noted that the township did not show any injury that adversely affected its operation of local government functions or that the Department of Environmental Resources' actions affected rights or claims of individual property owners.

In this case, the zoning hearing board has no authority or obligation to regulate the amount of water withdrawn from appellant's well, since this matter is within the exclusive power of the Department of Environmental Resources and the Delaware River Basin Commission. Both agencies are specifically designated by statute to determine such matters and issue any permits deemed by them to be appropriate.

Therefore, the decision and order of the zoning hearing board is reversed, and Worcester Township is directed to grant the special exception.