551 A.2d 1117

Del-AWARE Unlimited, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources et al., Respondents.

Del-AWARE Unlimited, Inc. et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of Environmental Resources et al., Respondents.

Philadelphia Electric Company, Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

North Penn and North Wales Water Authorities, Petitioners *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

Argued June 15, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and McGINLEY.

*Robert J. Sugarman, Sugarman & Cohen,* for petitioners, Del-AWARE Unlimited, Inc., et al.

*Bernard M. Chanin,* with him, *William G. Frey, Pamela S. Goodwin and Michael M. Meloy;* Of Counsel: *Wolf, Block, Schorr and Solis-Cohen,* for petitioner/respondent, Philadelphia Electric Company.

*Jeremiah J. Cardamone,* with him, *Ann Thornburg Weiss, Timoney, Knox, Hasson & Weand,* for petitioners/respondents, North Penn and North Wales Water Authorities.

*Louise S. Thompson,* for respondent, Department of Environmental Resources.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., December 9, 1988:

Del-AWARE Unlimited, Inc. (Del-AWARE) appeals two decisions of the Environmental Hearing Board (Board) each dated May 27, 1987.

In No. 1462 C.D. 1987, Del-AWARE challenges an order dismissing ten appeals from several permit extensions and modifications for construction and operation of the Point Pleasant water diversion project (project). In the appeal docketed at No. 1463 C.D. 1987, the Board

denied Del-AWARE's motion to enforce a 1984 Board opinion and order remanding in part for the Department of Environmental Resources (Department) to re-evaluate two permits also related to the project. In addition, Philadelphia Electric Company (PECO), North Penn and North Wales Water Authorities (North Penn/North Wales) have separately appealed portions of the latter order. (Nos. 1843 C.D. 1987 and 1851 C.D. 1987, respectively). The project has generated much litigation.[1] Because of its protracted history and complexity, we will address each of these appeals seriatim, delineating only those facts necessary for the present disposition.

Our scope of review of a Board decision is limited to determining whether an error of law has been committed, constitutional rights have been violated, or any necessary findings of fact are unsupported by substantial evidence. *Einsig v. Pennsylvania Mines Corp.*, 69 Pa. Commonwealth Ct. 351, 452 A.2d 558 (1982).

### Nos. 1843 C.D. 1987 and 1851 C.D. 1987

Pursuant to their cross appeal, North Penn/North Wales initially contend that all of Del-AWARE's appeals from the instant temporary permit extensions should be

---

[1] The permits underlying the project have been continually challenged. For a more complete history, *see Del-AWARE Unlimited, Inc. v. Department of Environmental Resources*, 96 Pa. Commonwealth Ct. 361, 508 A.2d 348 (1986), *allowance for appeal denied*, 514 Pa. 644, 523 A.2d 1132 (1986) (*Del-AWARE I*); *Del-AWARE Unlimited, Inc. v. Pennsylvania Public Utility Commission*, 99 Pa. Commonwealth Ct. 634, 513 A.2d 593 (1986); *allowance for appeal denied*, 515 Pa. 587, 527 A.2d 547 (1987); *Sullivan v. County of Bucks*, 92 Pa. Commonwealth Ct. 213, 499 A.2d 678 (1985); *Philadelphia Electric Co. v. Department of Environmental Resources*, 108 Pa. Commonwealth Ct. 7, 529 A.2d 1137 (1987).

dismissed because each of the extension periods has since expired, thus rendering the corresponding appeals moot. They note further that Del-AWARE has in the meantime appealed the subsequent extensions and will not be denied an opportunity to pursue any legitimate concerns it may have at such time as the Department acts to permanently extend the permits. Del-AWARE answers that its appeals are not moot because the facts applicable to each permit extension may be unique in light of changed circumstances which serve as a basis for future extensions.

An appeal will be dismissed when the occurrence of an event renders it impossible for the court to grant the requested relief. *Goldsmith v. Lower Moreland School District,* 75 Pa. Commonwealth Ct. 288, 461 A.2d 1341 (1983). The only exceptions to this rule occur where the issues involved are of a recurring nature, of important public interest, and capable of repeatedly evading review. *Goldsmith*.

Ordinarily, the facts underlying the mere extension of an existing permit would not vary significantly from the factual basis of the permit as originally approved. However, based on the project's complexity, its long duration and the numerous technical, legal and political changes that have surrounded it, we are concerned that material permit variations might improperly be excluded from review were we to dismiss this appeal as moot. Accordingly, we will address the merits of the instant appeals.

### No. 1463 C.D. 1987

In 1982, Del-AWARE appealed the issuance of three encroachment permits (ENC 09-51, ENC 09-77, ENC 09-81) and a construction permit for the proposed Bradshaw Reservoir dam (DAM 09-181). In an order dated June 18, 1984, the Board found that the Depart-

ment had properly issued the permits, except for two encroachment permits affecting the East Branch of the Perkiomen Creek (ENC 09-77), and the North Branch of the Neshaminy Creek (ENC 09-81). These matters were remanded to the Department to assess in more detail erosion effects and to require as a condition that National Pollutant Discharge Elimination System (NPDES) permits be obtained. This Court affirmed the Board's decision in *Del-AWARE I*. Del-AWARE contends that the Department did not comply with the guidelines set forth in *Del-AWARE I* and it is now entitled to enforcement of that order. We disagree.

In response to the Board's order, the Department amended each of the challenged permits to require NPDES permit approval. The respective permit holders, Neshaminy Water Resources Authority (Authority) and PECO thereafter submitted NPDES permit applications.[2] Also, pursuant to the Board's remand, the Department conducted field surveys and computer modeling to evaluate depth velocity relationships, surface water profiles, and streambed stability. Soil sampling and testing were performed by the Bureau of Topographic and Geologic Survey.[3] The Department concluded in each case that full pumping operation would have less erosional impact than under natural annual flood or high flow events and that to the extent erosion could not be controlled, the benefits to be derived outweighed the environmental impact. Based on the Board's extensive findings and considered conclusions, we hold that the Department fully complied with the

---

[2] The record reveals that the Department's decisions on these applications were to be rendered in due course, prior to operation.

[3] The results were officially reported in Point Pleasant Pump Station Hydraulic and Streambed Stability Investigations Along the East Branch Perkiomen Creek and the North Branch Neshaminy Creek (April 1985).

remand order ultimately affirmed in *Del-AWARE I.* Del-AWARE's instant motion to enforce is without merit and, in our view, constitutes an improper collateral attack on the Department's disposition of these matters.

### No. 1462 C.D. 1987

Del-AWARE further appeals the Board's May 27, 1987 opinion and order sur motion to dismiss which, in part, dismissed for lack of standing its challenges to the extension and modification of the Bradshaw Reservoir Dam permit (DAM 09-181) issued to PECO and the extension of North Penn/North Wales' Water Allocation permit (WA 978601).

In dismissing Del-AWARE's appeal challenging the Bradshaw Reservoir Dam Permit, the Board held:

> Del-AWARE has not met the 'substantial interest' test through its members. Member Kathleen Criste lives one quarter mile away from the Bradshaw Reservoir site. She allegedly makes use of and depends upon groundwater supplies near her residence. Although we have deferred discussion of causation, nevertheless, we can assert here that this bare allegation of groundwater use relates to a harm too speculative to warrant a finding of 'substantial interest.' Ms. Criste also is allegedly concerned with potential flooding. The pleadings, however, do not specify whether she lives upstream or downstream from the dam. Without more factual specificity, her 'substantial interest' claim is very speculative and will not suffice.

Board opinion, pp. 14-15.

Del-AWARE contends that the Board's reasoning is factually in error inasmuch as Criste lives in the watershed of the reservoir—a watershed divide—and thus necessarily is downstream. Accordingly, Del-AWARE

maintains that the allegations of potential flooding of its member's property are sufficient to establish standing. Del-AWARE further complains that it was not given a reasonable opportunity to otherwise establish standing. PECO, to whom this permit was issued, responds that the Board correctly determined the allegations of harm as too speculative and non-specific to establish standing.

One who seeks to challenge a governmental action must have a direct interest in the subject matter of the litigation; the interest must be immediate and not a remote consequence of the action; and the interest must be substantial. *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975). It is not sufficient for the party claiming to be aggrieved to assert the common interest of all citizens; rather, there must be some discernable adverse effect to an interest other than abstract public interest. Further, there must be a sufficiently close causal connection between the challenged action and the asserted injury to qualify the interest as immediate rather than remote. *William Penn Parking Garage, Inc.; see also Strasburg Associates v. Newlin Township,* 52 Pa. Commonwealth Ct. 514, 415 A.2d 1014 (1980).

In this instance, we cannot conclude that the Board erred in finding Del-AWARE's assertions of Criste's interests insufficient to meet these minimum standing requirements. In its supplement to appellants' pre-hearing memorandum, Del-AWARE averred that Criste lived one quarter mile from the Bradshaw site, her property was in the Geddis Run watershed and she was concerned about impacts upon groundwater supplies, potential flooding, blasting and noise. Del-AWARE's unexplained assertion of groundwater impacts upon Criste's property does not demonstrate any substantial probability that such impacts may occur. Criste's concerns of flooding are likewise speculative and nonspecific. Del-AWARE asks this Court to assume that be-

cause Criste resides downstream from the Bradshaw site, her property is necessarily subject to flooding. However, Del-AWARE failed to state with particularity that Criste's property is sufficiently proximate to a location along the edge of a watershed that would be subject to water that might drain from the reservoir. Even if one were to infer that Del-AWARE's averments of Criste's property interests are "substantial," there is little or no indication that her interests would be "immediately" or "directly" affected by the Bradshaw Reservoir, *i.e.*, that flooding is more than a remote possibility.

We also reject Del-AWARE's contention that it was not given a reasonable opportunity to provide information related to standing. In response to North Penn/North Wales' initial motion to dismiss, the Board issued an opinion and order allowing additional time for Del-AWARE to establish standing. It was specifically advised to provide detailed factual allegations of the interests involved, which we conclude it failed to do.

Del-AWARE also cites as error the Board's dismissal of its challenge to water allocation permit WA 978601 authorizing the Authority to divert water from the Delaware River. In its decision,

> the Board was unable to find even one Del-AWARE member who merited a finding of 'substantial' interest in the outcome of the appeal. The Del-AWARE members listed in its supplemental pre-hearing memorandum . . . were either concerned about increased utility rates, not an issue of concern to DER or that they would have to become customers of NP/NW. The Board fails to see to [sic] how any of these concerns meet the 'substantial interest' test.

Board order, p. 12 (citation omitted).

Again, we agree with the Board that the mere expectation of increased utility rates, particularly where

the individuals have yet to become customers of the utility, is not sufficient to establish a substantial, immediate or direct interest in the extension or modification of a Department permit. Clearly, such permits are issued primarily to protect environmental interests and bear only an attenuated relationship to the eventual water rates that may result from the construction of the planned structures.

Del-AWARE's further contentions, as they appear in its primary brief, are poorly formulated and largely devoid of merit.[4] Del-AWARE argues that "[m]ost astoundingly, in dismissing the appeal from the new Bradshaw reservoir permit, the Board totally failed to recognize that there was a new Bradshaw permit, although the permit itself was attached to the appeal, and the appeal related to the new Bradshaw permit." Appellants' brief, p. 3. Despite Del-AWARE's characterizations, what in fact occurred was that the Department issued a revised permit (DAM 09-181A) for the Bradshaw Reservoir Dam in December 1986, which extended the existing permits with certain modifications. Further, as the Board pointed out, its decision was without effect upon the appealability of any Department

---

[4] We strongly admonish Del-AWARE counsel for submitting briefs not in compliance with appellate rules. The brief filed in its appeal at No. 1462 C.D. 1987 contained no statement of jurisdiction, Pa. R.A.P. 2114; no statement of the order or other determination in question, Pa. R.A.P. 2115; no statement of the questions involved, Pa. R.A.P. 2116; and no summary of argument, Pa. R.A.P. 2118. The history of the case section contains a substantial amount of argument, in contravention of Pa. R.A.P. 2117(b). Both Del-AWARE briefs suffered from insufficient references to the record and contained various excursions into a generalized attack upon the project as a whole, in blatant disregard of the precise legal questions at hand. Not only do these errors negatively reflect upon the attorney and his profession but they greatly hamper our review of the matter.

amendments made to the Bradshaw Reservoir design (Board opinion, p. 25). Del-AWARE has not been prejudiced and is not precluded from further challenging any such permit amendments.

Del-AWARE complains that the Board "elected to short cut normal judicial process" and "muzzled the issues to accommodate the project." Such allegations are not supported by the record.[5] The Board's lengthy and well-reasoned opinion indicates that Del-AWARE was *properly* precluded from raising a litany of issues fully adjudicated in *Del-AWARE I*.[6] A judgment in a prior action operates to collaterally estop the relitigation of identical issues which were actually litigated and were essential and material to the judgment. *Fiore v. Department of Environmental Resources,* 96 Pa. Commonwealth Ct. 477, 508 A.2d 371 (1986). In light of the sheer number and often overlapping nature of the issues here and in *Del-AWARE I,* we have no difficulty in holding that the Board properly identified for review only those issues not previously adjudicated.

Del-AWARE asserts that significant changes have occurred which the Department did not take into con-

---

[5] Initially, we note that any present objection that this matter was ultimately decided by one Board member was waived. While this matter was pending, Board Chairman Maxine Woelfling recused herself upon Del-AWARE's motion and Board member Edward Gerjuoz, who drafted portions of the opinion, later resigned.

[6] Del-AWARE attempted to argue that (1) construction of a water intake structure would adversely affect certain fish populations; (2) the project contravenes the Delaware River Basin Commission's "Good Faith Agreement" establishing various restrictions on Delaware River water; (3) the project would adversely impact on area residents by inducing growth; (4) the project would produce high utility rates; (5) reasonable alternatives were not explored; and (6) construction aspects of encroachment permit (ENC 09-51) were also not fully considered.

sideration in issuing the permit extensions. We cannot agree.

Del-AWARE alleges that because Bucks County has withdrawn from the project, full reconsideration of the project is required. Initially, we note that this allegation is unsupported by the present record. Further, while such a circumstance may have political implications, so long as project construction continues under the direction of the appropriate permit-holders, to whom these permits were duly assigned, and under the appropriate regulatory authorities, there is no reason to remand for reconsideration of this dubious allegation.

Finally, we are satisfied from our review of the record and the Board's opinion that the various alternatives to the project have been explored and that subsequent developments affecting the project have been duly considered and the appropriate responses made.[7] The Board properly required Del-AWARE to show that the Department did not have good cause to grant the respective permit extensions and modifications, a burden which it has failed to meet.

Accordingly, we affirm those portions of the Board's decision dismissing Del-AWARE's appeals discussed herein.

PECO and North Penn/North Wales contend that the Board erred in failing to include lack of standing in its rationale for dismissing Del-AWARE's appeals from

_____

[7] We also note that the Department proceeded within its authority under Section 8 of the Act of June 24, 1939, P.L. 842, *as amended*, 32 P.S. §638, in extending Water Allocation Permit (WA-978601) because the project has been postponed by events beyond the permittees' control and the permittees have otherwise commenced construction in good faith. Likewise, the Department's references to the Act of June 14, 1923, P.L. 704, *as amended*, 32 P.S. §§591-600, 621-625, was its acknowledgment of an additional authority for its issuance of the permits in question and does not constitute a basis for overturning its decision.

594

three encroachment permits (ENC 09-51, ENC 09-77, ENC 09-81). PECO and North Penn/North Wales maintain that the riparian property owners otherwise affected by the construction permits have not demonstrated a substantial, direct and immediate interest in the mere *extension* of construction deadlines. However, this question need not be addressed inasmuch as we have herein affirmed the Board's denial of these appeals on the basis of collateral estoppel. We would simply note that the affected property owners, who concededly have standing to challenge the underlying permits as originally issued, are not deprived of such standing when those permits are extended or modified. The effects of continued construction activities are no less existent than the initiation of such activities.

Therefore, the decisions of the Board, both dated May 27, 1987, are affirmed.

## ORDER

The Opinion and Order Sur Motion to Dismiss of the Environmental Hearing Board, EHB Docket No. 86-028-R (consolidated appeals) 87-037-R to 87-041-R, inclusive, dated May 27, 1987, is affirmed. The Order of the Board, EHB Docket No. 82-177-R and 82-219-H dated May 27, 1987, is affirmed.

Judge MacPhail did not participate in the decision in this case.