In Re:  Appeal of the Board             :
of Auditors of McKean                   :
Township/2017 Meeting                   :    No.  1419 C.D. 2017
                                        :
Appeal of:  Board of Auditors           :    Argued:  May 7, 2018
of McKean Township                      :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
JUDGE McCULLOUGH                              FILED:  December 21, 2018


The Board of Auditors of McKean Township (Board or Auditors) appeals from the September 12, 2017 order and verdict entered by the Court of Common Pleas of Erie County (trial court) in favor of the Supervisors of McKean Township (Supervisors) following a non-jury trial.  We affirm.


## Background

In addition to their duties as elected Supervisors, for which they are paid a statutorily imposed stipend, the Supervisors appoint themselves to work in various additional capacities as employees of McKean Township (Township).  (Trial Court's Finding of Fact (F.F.) No. 9.)  However, like all other supervisors in Second Class Townships, the Supervisors set the pay rates for the Township's employees, (F.F. Nos. 8, 11), and this gives rise to general concerns that the Supervisors may engage in self-dealing if they were vested with the authority to decide and approve their own compensation as employees.  *See Delaware Township Board of Auditors v. Delaware*

*Township*, 132 A.3d 523, 530 (Pa. Cmwlth. 2016).  This is why, under section 606(a) of The Second Class Township Code (Code),[1] "[t]he compensation of supervisors, when employed as roadmasters," "secretary," or some other permissible employment position, "shall be determined by the board of auditors, at an hourly, daily, weekly, semi-monthly or monthly basis."  53 P.S. §65606(a).  However, the auditors do not have utterly free reign over the matter.  Pursuant to section 606(a) of the Code, the supervisors' compensation, as set by the board of auditors, "shall be comparable to compensation paid in the locality for similar services."  *Id.*  The auditors' authority to determine the supervisors' compensation is also curtailed by the general requirement that discretion must not be abused in the legal sense.  *See Blumenschein v. Housing Authority of Pittsburgh*, 109 A.2d 331, 334-35 (Pa. 1954); *Mason v. Hanover Township School District*, 89 A. 552, 552 (Pa. 1913).

The Township has three elected Supervisors and three elected Auditors. (F.F. Nos. 4, 6.)  On January 4, 2017, as they are required to do so on a yearly basis,[2] the Auditors, Joseph Szymanowski, Delores Renick, and Barbara Craig, established the 2017 pay rates for the three Supervisors, Brian P. Cooper (supervisor and roadmaster since 2012), Janice T. Dennis (supervisor and secretary, who in her second term, has at least four years of experience), and Ronald T. Bole (supervisor and roadmaster since 2016).  Contrary to a past pattern and practice of gradually increasing the wages for the Supervisors when working as a roadmaster or secretary, the Auditors

---

[1] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §65606(a).

[2] Section 901(a) of the Code, 53 P.S. §65901(a) ("The board of auditors shall meet annually [and] shall determine the compensations for the current year authorized in section 606 for supervisors employed by the township.").

2

reduced the salaries for these positions.[3] Specifically, the Auditors reduced the wage of Supervisor Cooper, in his role as roadmaster, from $23.60/hour in 2016 to $20.19/hour, and reduced the wage of Supervisor Dennis, in her role as secretary, from $23.60/hour in 2016 to $14.00/hour. Regarding Supervisor Bole, in his role as roadmaster, the Auditors determined that his 2016 hourly wage rate of $18.00 would remain the same in 2017. (F.F. Nos. 5-7, 13-14, 29.) The Auditors also eliminated the Supervisors' compensation for overtime and "substantially reduced" their benefit packages. (F.F. No. 15.)

Dissatisfied, the Supervisors appealed to the trial court. They contended that the Auditors' determinations with respect to their compensation were not "comparable" to the compensation paid in the geographic locale, thereby violating section 606(a) of the Code. The Supervisors further contended that the Auditors acted arbitrarily, capriciously, with improper bias, and/or in bad faith.

On May 3, 2017, the trial court conducted a non-jury trial. On June 15, 2017, the trial court deemed it necessary to appoint Aaron Phillips from Decision Associates Business Consulting Group as a neutral expert in the field of human resources, responsibilities/duties, and compensation/benefits. Citing Pa.R.E. 706, the trial court entered an order appointing Phillips "as an expert to review possible compensation, payroll and benefit packages for [the] Supervisors and develop a report for [the trial court] and for both counsel." (F.F. No. 23.) The trial reconvened on July 13, 2017. After receiving evidence and testimony from various witnesses, including

---

[3] In 2012 and 2013, the former Auditors increased the hourly pay rate of the Supervisors in their capacities of roadmaster and secretary. (Pet'r Ex. 20-21.) In 2014, Auditors Renick and Craig, along with then-Auditor Rodger Eck, voted unanimously to increase the hourly rate of the roadmasters to $23.40 and to increase the hourly rate of the Secretary to $23.40. (Pet'r Ex. 22.) Apparently, Supervisor Bole started at a lesser wage in his capacity as a roadmaster because he did not become a supervisor and a roadmaster until 2016.

3

Phillips, the trial court directed the parties to submit proposed findings of fact and conclusions of law. They complied. (Trial court op. at 3-4.)

On September 12, 2017, the trial court entered its findings and conclusions, which we summarize as follows.

The Township is a Second Class Township with a population of 4,409 as of the 2010 Census. There are 21 Second Class Townships located in Erie County, Pennsylvania. (F.F. Nos. 1-2; 2010 Census Summary File, Geographic Identifiers.[4])

Auditor Craig contacted numerous Second Class Townships surrounding the Township to inquire about the compensation of their supervisors, including the years of service and salary; however, she did not inquire as to whether or not these townships reduced their supervisors' compensation. Auditor Craig stated that although Supervisors Dennis and Cooper had their wage rates reduced, and Supervisor Cooper was reclassified as a salaried employee, there were no problems with their work performance. (F.F. Nos. 20-21.) Further, Auditor Szymanowski admitted that the Auditors did not speak with comparable Second Class Townships that actually reduced the compensation and benefits of their supervisors. (F.F. Nos. 37-38.)

Auditor Renick complained that the Supervisors were being paid "too much," including overtime pay. (F.F. No. 36.) Auditor Szymanowski had previously stated that the Supervisors' benefits packages were "unheard of in this marketplace." (F.F. No. 44.) However, Supervisor Dennis stated that the Township faced no financial problems, such as a budget crisis or debt issues, that would have a negative impact on the Township employees' compensation. (F.F. No. 50.)

---

[4]*American FactFinder*, U.S. CENSUS BUREAU, POPULATION, HOUSING UNITS, AREA, AND DENSITY: 2010 - COUNTY -- COUNTY SUBDIVISION AND PLACE 2010 CENSUS SUMMARY FILE 1, *available at* https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?src=CF (last visited December 4, 2018).

4

In addition, Auditor Szymanowski stated that in determining the compensation rates for the Supervisors, the Auditors reviewed the results listed in the Pennsylvania State Association of Township Supervisors 2016 Wage and Benefits Survey (PSATS). (F.F. No. 39.) The PSATS provides the compensation wages for Second Class Townships with populations between 4,001 and 8,000 throughout the Commonwealth, separated into four categories: low, average, medium, and high. The hourly rate information for a full-time roadmaster is: low—$9.00/hour, average—$23.85/hour, medium—$23.60/hour, and high—$36.46/hour. The hourly rate information for a part-time secretary is: low—$16.48/hour, average—$18.84/hour, medium—$17.24/hour, and high—$23.60/hour. (Reproduced Record (R.R.) at 37a.)

According to Auditor Szymanowski, the Auditors established the compensation and benefits for Supervisors Bole and Cooper by dividing the average part-time roadmaster salary and the average full-time roadmaster salary, and then multiplying that quotient and the salary of the non-elected roadmaster to arrive at $18.00/hour and $20.19/hour, respectively. (F.F. Nos. 41, 43.) Auditor Szymanowski stated that the Auditors established the compensation and benefits for Supervisor Dennis by dividing the average part-time average Secretary salary and the average full-time Secretary salary, then multiplying that quotient with the only full-time Secretary salary that was obtainable from a nearby Second Class Township, Greene Township ($20.90/hour), to arrive at $14.00. (F.F. No. 42.)

Phillips conducted his own inquiry into the matter and reviewed, among other things, information from comparable and relevant Second Class Townships, PSATS data, and the level of experience that the Supervisors possess. Phillips ultimately opined that Supervisors Bole and Cooper, as roadmasters, should have a compensation rate between $23.79 and $28.55, and Supervisor Dennis, as secretary,

5

should have a compensation rate between $18.91 and $22.69. (F.F. Nos. 24-29.) Phillips also concluded that "Supervisors Bole and Dennis, both of whom work part-time, are not eligible for Township benefits; however, Supervisor Cooper is eligible for benefits, which he determined are currently inferior to benefits offered by other comparable Second Class Townships." (F.F. No. 30.)

With respect to the Auditors' motivation or intent in making the wage reductions, the trial court found:

22. Auditor Craig was "upset" that [the] Supervisors hired an independent auditor, Monahan & Monahan, to which she [(Auditor Craig)] wrote a "Letter to the Editor" expressing her disapproval with the outsourcing of auditing work and [the] Supervisors' "refusal" to supply information relating to expenditures.

\*     \*     \*

40. Auditor Szymanowski believed Supervisor Bole supported and campaigned for his [(Auditor Szymanowski's)] opponent for Auditor in 2015.

\*     \*     \*

47. At the January 4th, 2017 meeting, Auditor Szymanowski told Supervisor Dennis that she "couldn't ask questions" as to why [the] Supervisors' compensation was reduced.

\*     \*     \*

49. When [the] Supervisors hired an independent auditor, Monahan & Monahan, "as needed," [the] Auditors became "upset."

\*     \*     \*

53. Supervisor Bole acknowledged he supported the opponent for Auditor Szymanowski's Auditor position in

6

2015, and Auditor Szymanowski informed him to stop supporting his opponent "or else."

(F.F. Nos. 22, 40, 47, 49, 53.)

Based on these facts, the trial court made the following conclusions of law:

A comparison of the 2016 PSATS Survey compensation information and [the] Supervisors' compensation following the January 4, 2017 Township meeting clearly demonstrates [that the] Supervisors' compensation is below the average compensation for a full-time roadmaster and a part-time secretary in other Second[]Class Townships. Furthermore, [the] Auditors failed to present a specific methodology for arriving at [the] Supervisors' compensation. According to Auditor Szymanowski, [the] Auditors divided the average compensation for part-time and full-time roadmasters and secretaries, and then multiplied the respective quotients by [the] Supervisors' current salaries to arrive at the 2017 compensation. However, [the] Auditors' determination simply reduces [the] Supervisors' compensation. [The] Auditors failed to account for "comparable compensation paid in the locality for similar services" pursuant to the [Code]. Rather, [the] Auditors "cherry-picked" certain Second[]Class Townships that they thought subjectively were comparable to [the] Township. The Court finds and concludes [that] the determinations made by [the] Auditors do not adhere to statutory requirements of the [Code].

Furthermore, the Auditors' decisions to reduce [the] Supervisors' compensation and benefits are based upon improper bias and are arbitrary and capricious. First, Supervisor Bole supported and campaigned for Auditor Szymanowski's opponent for Auditor in 2015, which created friction between Auditor Szymanowski and Supervisor Bole. Second, [the] Supervisors hired an independent auditor, Monahan & Monahan, to review [the] Township's finances, which became another point of contention between the Auditors and Supervisors. Auditor Craig demonstrated displeasure about this decision to hire an independent auditor by her writing and submitting for publication a "Letter to the Editor," expressing her disapproval with [the] Supervisors'

7

outsourcing auditing work and the Supervisors' "refusal" to supply [the] Auditors with information relating to expenditures. Finally, during the January 4, 2017 meeting, Auditor Szymanowski refused to answer [the] Supervisors' questions [and] explain why [the] Auditors reduced [the] Supervisors' compensation, thereby providing no rationale or basis for [the] Auditors' decision-making. Therefore, the clear negativism between [the] Auditors and [the] Supervisors was the catalyst for [the] Auditors reducing [the] Supervisors' compensation and benefits.

(Conclusions of Law (COL), at pp. 8-9.)

The trial court then focused on the testimony and report of Phillips. The trial court determined that Phillips "developed an agreeably and generally acceptable methodology in the field of human resources for determining [the] Supervisors' compensation." *Id.* at 9. In his report, Phillips "analyzed and developed three (3) options in crafting the appropriate ranges of compensation." *Id.* "For the first option, Mr. Phillips utilized Second[]Class Township data within the Northwest Region; for the second option, he utilized Second[]Class Township data with populations between 4,001 and 8,000; and for the final option, he utilized a custom blend of similar size and population Second-Class Townships within Erie County." *Id.* In making this multifaceted assessment, Phillips considered the PSATS data and compared the Supervisors' level of experience to other supervisors in Second Class Townships. The trial court credited and accepted the recommendations of Phillips as "the appropriate methodology for determining [the] Supervisors' compensation and benefits." *Id.* at 10.

In a separate order dated September 12, 2017, the trial court (1) set the compensation rate for Supervisors Bole and Cooper, while acting as roadmasters, at $26.17/hour; (2) set the compensation rate for Supervisor Dennis, while acting as Secretary, at $21.75/hour; (3) reinstated the Supervisors' benefit packages, concluding that the Supervisors' inclusion in the fringe benefits program did not require approval

8

by the Auditors pursuant to section 606(c)(1) of the Code, 53 P.S. §65606(c)(1);[5] (4) reinstated the Supervisors' overtime compensation; and (5) ordered the Township to pay the Supervisors' reasonable attorney's fees under section 915(1) of the Code, 53 P.S. §65915(1).[6]

Thereafter, the Auditors filed a notice of appeal, and the trial court ordered them to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). They did.

In its accompanying opinion under Pa.R.A.P. 1925(a), the trial court initially determined that the Auditors' statement of errors was too lengthy and failed to document the precise legal issues raised. The trial court therefore requested that this Court deem the issues in the Auditors' statement waived. (Trial court Pa.R.A.P. 1925(a) op. at 4-5.)

Addressing the merits of the issues in the Auditors' statements in the alternative, the trial court reiterated its impression that the Auditors employed an unsound methodology and that their "decision was influenced by improper bias." *Id.* at 5. The trial court emphasized the fact that the Auditors devised compensation rates that were below the "average" listed in the section of the PSATS dealing with the wage rates for Second Class Townships throughout Pennsylvania and reiterated that the determinations were tainted by improper bias:

---

[5] "In addition to the compensation authorized under this section, supervisors while in office or while in the employ of the township may be eligible for inclusion in township-paid insurance plans," including "group life, health, hospitalization, medical service and accident insurance plans paid in whole or in part by the township." 53 P.S. §65606(c)(1).

[6] "If in the opinion of the court the final determination is more favorable to the township officer involved than that awarded by the board of auditors, the township shall pay reasonable attorney fees." 53 P.S. §65915(1).

The [PSATS] clearly demonstrated [that the] Supervisors' 2017 compensation, as set by [the] Auditors, is below the standard compensation for roadmasters and secretaries. According to "Townships with Populations from 4,001 to 8,000," the average full-time roadmaster salary is $23.85/hour, but [the] Auditors set [Supervisor] Cooper's 2017 compensation at $20.19/hour. Further, the average part-time roadmaster salary is $18.23/hour, but [the] Auditors had frozen [Supervisor] Bole's 2017 compensation at $18.00/hour. Finally, the average part-time secretary salary is $18.84/hour, but [the] Auditors set [Supervisor] Dennis' 2017 compensation at $14.00/hour. Although the [Code] did not require calculation of the average compensation or a specific methodology for determining calculations, the testimony and evidence demonstrated [that the] Auditors arbitrarily and capriciously reduced or had frozen [the Supervisors'] salaries and did not provide a consistent and well-reasoned methodology other than personal preference and ideals.

*Id.* at 10-11.

This appeal ensued.

## Discussion

The Auditors assert that any perceived conflict between them and the Supervisors is superficial and that the evidence was legally inadequate to support a finding of bad faith, arbitrary or capricious action, or an abuse of power. The Auditors contend that they discharged their duty in accordance with section 606(a) of the Code and properly balanced the financial interests of the taxpayers that they represent and those of the Supervisors. According to the Auditors, their compensation determinations were based on rational calculations; the wages were consistent with the PSATS survey dealing with the Northwest Region of the Commonwealth; and the trial court effectively substituted its own judgment as to what the rates should be, using a court-appointed expert to do so.

10

In rebuttal, the Supervisors point out that the Auditors cut or reduced their wages and claim that this is a drastic and novel event, marked by a "complete lack of methodology." (Supervisors' brief at 18.) The Supervisors further argue that the Auditors acted in bad faith or were impermissibly biased because they "followed through with threats to punish the Supervisors." *Id.* at 12. Additionally, the Supervisors urge this Court to conclude that the Auditors' statement of errors was extremely vague, resulting in waiver of all the issues they seek to raise on appeal.

The Pennsylvania State Association of Township Supervisors (Association) filed an amicus brief. Most notably, the Association asserts that the Auditors need a legitimate reason to reduce wages, such as budgetary issues.

## Waiver

Prefatorily, this Court declines to find waiver due to alleged deficiencies in the Auditors' statement of errors. Under the Pennsylvania Rules of Appellate Procedure, a statement of errors "should be sufficiently specific to allow the judge to draft the opinion required under 1925(a), and . . . the number of issues alone will not constitute waiver—so long as the issues set forth are non-redundant and non-frivolous." Pa.R.A.P. 1925, *Note*. Here, the Auditors have filed a "concise-yet-sufficiently-detailed," *id.*, statement of errors, specifically listing the findings of fact that they challenged and the relevant portions of the trial court's conclusions of law. (*See* Auditors' brief at App. C.) The trial court also issued an opinion fully addressing the issues raised, and our ability to conduct appellate review has not been hampered in any manner.

11

**Bias, Bad Faith, or Arbitrary/Capricious Decision-Making**

Although the Auditors possess discretion under section 606(a) of the Code to set salaries, *Synoski v. Hazle Township*, 500 A.2d 1282, 1285 (Pa. Cmwlth. 1985), this discretion cannot be exercised in a manner that is stained with "bad faith, fraud, capricious action or abuse of power." *Blumenschein*, 109 A.2d at 334. As our Supreme Court observed while discussing a statute that provided an elected board of officials with discretion to determine the compensation rate of a municipal employee:

> [T]here must be somewhere a line of demarcation between the exercise of reasonable official discretion in fixing compensation upon the one hand, and a clear abuse of that discretion, and the unreasonable performance of duty, upon the other. No specific rate of compensation is fixed by the law. It contemplates the exercise of reasonable discretion . . . in the interest of the public. The language of the [statute] is not, however, to be construed as vesting in the [] board an arbitrary discretion, to be used in defiance of the public interest, and without restraint.

*Mason*, 89 A. at 552.

In order for a public official to render a decision that is not arbitrary and capricious, the official

> must examine the relevant data and articulate a satisfactory explanation for [the] action including a rational connection between the facts found and the choice made. In reviewing that explanation, [the court] must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment . . . .

*Cary v. Bureau of Professional and Occupational Affairs, State Board of Medicine*, 153 A.3d 1205, 1210 (Pa. Cmwlth. 2017) (en banc) (quoting *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983)).

Moreover, a discretionary act made by a public official will be set aside if it is made in bad faith; that is, when the decision is tainted with an improper motive or ill will. *See Lily Penn Food Stores, Inc. v. Pennsylvania Milk Marketing Board*, 472 A.2d 715, 719 (Pa. Cmwlth. 1984); *Bruhin v. Commonwealth*, 320 A.2d 907, 910 (Pa. Cmwlth. 1974); *Redevelopment Authority of the City of Erie v. Owners or Parties in Interest*, 274 A.2d 244, 247 (Pa. Cmwlth. 1971). The decision of a public official cannot "be based upon private motives inconsistent with the public welfare." *Washington Park, Inc. Appeal*, 229 A.2d 1, 3 (Pa. 1967). Somewhat relatedly, an abuse of discretion occurs when there is "a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Paden v. Baker Concrete Construction Inc.*, 658 A.2d 341, 343 (Pa. 1995). "Fairness of course requires an absence of actual bias." *In re Schlesinger*, 172 A.2d 835, 840 (Pa. 1961).

Upon review, we conclude that the evidence was sufficient to support the trial court's findings and legal conclusion that the Auditors' compensation decisions were the byproduct of bad faith, improper bias, and/or constituted arbitrary or capricious action.

With regard to the Auditors' underlying motive, the credited evidence demonstrates that there were no discernable problems with the Supervisors' work performance as roadmasters or secretary, or that the Township was experiencing financial problems, that would necessitate or rationalize the wage reductions. (F.F. Nos. 20-21, 50.) Instead, the trial court's findings establish that the Auditors were "upset" that the Supervisors outsourced auditing work to a private firm, (F.F. Nos. 22, 49), which is most notably memorialized in Auditor Craig's letter to an editor in a local newspaper. In this submission, Auditor Craig portrayed a deep and divisive conflict

13

between the Auditors and the Supervisors, alleged that the Supervisors have acted indecorously, and essentially requested the public to take the side of the Auditors in the dispute:

> The state municipal code in part charges the elected auditors with auditing, adjusting and settling the accounts of all elected officials of the township.
>
> Of major concern to the elected auditors and taxpayers is the supervisors' outsourcing of the audit to Monahan & Monahan, public accountants, to restrict the open records availability to the elected auditors for inspection.
>
> Historically the [] Township auditors have a record of performing a detailed audit of township records, which in the past has identified supervisors' personal household expenses being paid with township monies.
>
> Over the last year, the supervisors have refused to supply the elected auditors with information relating to expenditures. However, the auditors through an intense investigation have been able to put their fingers on runaway township expenditures . . . . [T]he auditors have also put their fingers on major purchases made outside municipal code regulations.
>
> The auditors have focused on doing their job for the taxpayers by employing over 2,000 hours of their time, at no cost to the township, and look for taxpayers' support as they push forward in a positive direction for the township.

(Pet'r Ex. 17.)

Based on their content, the above allegations strongly suggest, if not outright claim, that the Supervisors have engaged in misconduct and intentionally thwarted the Auditors' statutory responsibilities, namely their duty to oversee and conduct an official inspection of the expenditures of the Supervisors and the

14

Township's overall fiscal health.[7] This animosity toward the Supervisors is further reflected by the fact that the Auditors refused to answer questions regarding the reductions in compensation at the January 4, 2017 meeting and failed to provide the Supervisors with a reason for the downward adjustments. In addition, the strife occurring between the Supervisors and the Auditors is underscored by the fact that Auditor Szymanowski utilized the phrase "or else" toward Supervisor Bole on the campaign trail, carrying with it a thinly veiled threat that there "will be consequences" for the Supervisors. (F.F. Nos. 22, 49.)

Viewing these circumstances collectively and in a coalesced fashion, we conclude that they provided the trial court with an adequate basis upon which to reassess the Auditors' wage determinations on a substantive level to ensure fairness. In conducting such an inquiry, the trial court found that the Auditors engaged in statistical "cherry picking" and concluded that the Auditors arrived at their wage reductions through a flawed methodology. (COL at pp. 8-9, 11.) Given the trial court's factual findings, which find ample support in the record and are not meaningfully contested by the Auditors, we cannot conclude that the trial court erred in inferring, as a matter of law, that improper "personal preference and ideals" served as "the catalyst for [the] Auditors reducing [the] Supervisors' compensation and benefits." *Id.*; *see*

---

[7] Pursuant to the Code, the Auditors are statutorily obligated to audit, settle, and adjust the accounts of all elected officials of the Township, including the Supervisors. Section 901(a) of the Code, 53 P.S. §65901(a). The Auditors must also issue an annual report that contains, among other things, "a statement of the disbursements of the township during the fiscal year," "a detailed statement of the indebtedness of the township at the close of the fiscal year and the provisions made for the payment thereof together with the purposes for which it was incurred," and "a statement of the cost of ownership and operation of each public service industry owned, maintained or operated by the township." Section 904(b)-(d) of the Code, 53 P.S. §65904(b)-(d).

15

*Robb v. Stone*, 146 A. 91, 93-94 (Pa. 1929) (discussing the authority of the fact-finder to infer that official action amounted to "arbitrary will and caprice").

Although the Auditors dedicate a great portion of their brief in an attempt to minimize the conflict with the Supervisors and validate their wage reductions, these matters concern the weight and credibility of the evidence presented to the trial court. In essence, the Auditors contend that the trial court should have believed and afforded greater evidentiary weight to their testimony.[8]

It is beyond peradventure that the trial court, sitting as the fact-finder, is free to believe all, part or none of the evidence, to make all credibility determinations, and to resolve all conflicts in the evidence. *See Commonwealth v. Holtzapfel*, 895 A.2d 1284, 1289 n.2 (Pa. Cmwlth. 2006). An argument that the evidence was "unbelievable" is one that goes to the credibility of the witness's testimony. *Commonwealth v. Griffin*, 65 A.3d 932, 939 (Pa. Super. 2013). An argument that the fact-finder should have credited one witness's testimony over that of another witness goes to the weight of the evidence. *Commonwealth v. Gibbs*, 981 A.2d 274, 281-82 (Pa. Super. 2009). Under our standard of review, however, this Court cannot upset the trial court's credibility determinations or reweigh the evidence to make findings contrary to the trial court. *Holtzapfel*, 895 A.2d at 1289 n.2. Indeed, where, as here, a sufficiency of the evidence

---

[8] *See*, *e.g.*, Brief for the Auditors at 15 ("Auditor Szymanowki testified that he has known Supervisor Bole for more than 60 years and has considered him a friend, and did not agree he had any interactions with Supervisor Bole regarding political campaigns."); 16-17 ("In her testimony, Auditor Craig admitted to some concern and explained that allowing the [] Auditors to perform the audit would have saved the taxpayers money."); 17 ("While Auditor Renick did testify she was upset, she explained she felt that way because the role of auditor is to watch out for the taxpayers and there had been discrepancies in the books before. She denied the 2017 compensation decisions were in retaliation for outsourcing the audit."); 17 ("Auditor Szymanowski testified that he was happy the audit had been outsourced, though he was concerned with the company hired for the audit due to problems in other townships with missing money."); 17 ("The individual Auditors voiced some legitimate concerns over the decision to outsource the audit, and in some cases, shared those concerns with the township citizens.").

16

claim is raised, issues concerning the credibility and weight of the evidence are irrelevant and not part of the calculus. *Griffin*, 65 A.3d at 939; *Gibbs*, 981 A.2d at 281-82; *Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003). Instead, in a sufficiency challenge, we must view the evidence in the light most favorable to the Supervisors as the verdict winner and disregard any unfavorable evidence. *See Prieto Corporation v. Gambone Construction Co.*, 100 A.3d 602, 609 (Pa. Super. 2014). Applying that standard here, we are unable to find merit in the Auditors' arguments.

In analogous situations, the appellate courts of this Commonwealth have not hesitated to affirm the vacatur of reduced compensation where the fact-finder inferred that the decision maker based the reduction on an improper motive. *See Robb*, 146 A. at 93-94 (affirming a trial court's decree enjoining and voiding the decisions of a board of school directors to erect a new school and award a construction contract because the decisions were "influenced by other considerations than the public interests," being "based upon selfish and improper motives" and indicative of an "attitude . . . of revenge"); *Farris v. Swetts*, 46 A.2d 504, 506-07 (Pa. Super. 1946) (concluding that the decision of the board of school directors to lower the compensation of the tax collector from 4% to 2% on taxes collected was an arbitrary exercise of power where the trial court found that the compensation was "inadequate" and "unreasonable" and the decision was motivated by "political differences . . . between the tax collector and president of the school board"). Therefore, providing the trial court the deference it is entitled to as the fact-finder, we conclude that the trial court neither erred nor committed an abuse of discretion in setting aside the Auditors' wage determinations.

17

**Propriety of Expert Testimony**

The Auditors contend that the trial court erred in appointing and relying upon an expert, Phillips, asserting that this had the effect of "usurping the statutory role of the elected [] Auditors." (Brief for Auditors at 27.) However, in advancing this argument, the Auditors presuppose that they exercised their wage-setting discretion in an appropriate manner. As previously discussed, the trial court did not err in voiding the Auditors' wage determinations. Consequently, as a functional matter, it was necessary for the trial court to appoint an independent and neutral expert to decide the appropriate amount of wages for the Supervisors, especially considering that any expert proffered by the Supervisors would be exposed to claims of self-dealing and would severely undermine the command and purpose of section 606(a) of the Code. *See Delaware Township Board of Auditors*, 132 A.3d at 530 ("[T]he manifest intent of the legislature in Section 606 of the Code [is] to limit self-interested decision-making by supervisors."). In this context, we disagree with the Auditors that the trial court substituted its own discretion for that of the Auditors by appointing Phillips as an expert.

In their brief, the Auditors concede that Pennsylvania Rule of Evidence 706 vests the trial court with authority to appoint an expert witness. We must agree. *See* Pa.R.E. 706 (Court-Appointed Expert Witnesses);[9] *Commonwealth v. Correa*, 648 A.2d 1199, 1203 n.2 (Pa. Super. 1994) (reiterating a trial court's authority to appoint its own expert in a bench trial); *see also Wayne v. Cassatly*, 349 A.2d 545, 548 (N.J. Ct. App. 1975) (upholding the appointment of an independent expert when the

---

[9] "Where the court has appointed an expert witness, the witness appointed must advise the parties of the witness's findings, if any. The witness may be called to testify by the court or any party. The witness shall be subject to cross-examination by any party, including a party calling the witness. In civil cases, the witness's deposition may be taken by any party." Pa.R.E. 706.

testimony of the parties' experts suggested "undue partisanship"). Notably, a trial court need not accept the recommendation or conclusions of a court-appointed expert, *see Nomland v. Nomland*, 813 A.2d 850, 854 (Pa. Super. 2002), and a court-appointed expert is subject to the same standards which govern other expert witnesses under the Pennsylvania Rules of Evidence, *see In re Shell Oil Co.*, 607 A. 2d 1213, 1223 (Del. 1992) (observing that appointed experts are treated like any other expert under the Delaware Rules of Evidence).

Here, the Auditors do not challenge the admissibility of Phillip's expert opinion through the *Frye* test or otherwise.[10] Rather, the Auditors attack the evidentiary value of his expert testimony, contending that Phillips' survey "was limited by severe time constraints as he only had one day to collect the information"; his methodology "skewed the numbers presented" in the data forming the bases for his opinions; and Phillips erroneously interpreted "the experience claimed by the individual Supervisors." (Auditors' Brief at 28-30.) These arguments, however, mount challenges that pertain to the weight of the evidence. *See Craftmaster Manufacturing, Inc. v. Bradford County Board of Assessment Appeals*, 903 A.2d 620, 625, 629 (Pa. Cmwlth. 2006) (concluding that an expert's "error was relevant to the weight to be given to [his] opinion"); *Emerick v. Carson*, 472 A.2d 1133, 1136 (Pa. Super. 1984) (finding argument that the expert's opinion was "flawed" was a contention that "obviously goes to the weight to be accorded to [the] testimony . . . and not to its admissibility"). As explained above, such issues are to be resolved by the trial court as fact-finder and do not provide this Court with grounds to find reversible error.

---

[10] *See Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923); *Commonwealth v. Safka*, 95 A.3d 304, 306-08 (Pa. Super. 2014) (discussing the standards for admissibility of expert opinion testimony pursuant to the *Frye* test); *see also* Pa.R.E. 702 (Testimony by Expert Witnesses); 703 (Bases of an Expert's Opinion Testimony); 704 (Opinion on an Ultimate Issue); 705 (Disclosing the Facts or Data Underlying an Expert's Opinion).

Therefore, we conclude that the trial court did not err in appointing Phillips as an expert and crediting his testimony to support its findings of fact and conclusions of law.

## Conclusion

For the forgoing reasons, we can perceive no basis upon which to upset the trial court's order setting aside the Auditors' compensation determinations and devising a proper compensation package and remedy for the Supervisors.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of the Board          :
of Auditors of McKean                :
Township/2017 Meeting                :    No.  1419 C.D. 2017
                                     :
Appeal of:  Board of Auditors        :
of McKean Township                   :

## ***ORDER***

AND NOW, this 21ˢᵗ day of December, 2018, the September 12, 2017 order and verdict entered by the Court of Common Pleas of Erie County is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge