IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Estate of Carmen Neri      :
                                : No. 895 C.D. 2023

Appeal of: Estate of Carmen Neri  : Argued: June 3, 2025
and Michael Neri                :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge (P.)
                 HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                             FILED: July 17, 2025


        The Estate of Carmen Neri (Estate) and Michael G. Neri (Executor), in his capacity as executor (collectively, Taxpayer) appeal the August 3, 2023 order of the Philadelphia County Court of Common Pleas (trial court) affirming the determination of the City of Philadelphia's (City) Board of Revision of Taxes (Board), which denied Taxpayer's request to reduce the assessed value of the Estate's commercial property located at 7820 Frankford Avenue in Philadelphia, Pennsylvania (Property) for Tax Years 2019 through 2024.  Taxpayer contends that the trial court erred by not following precedent, by not finding that the City's use of "ratio studies" for its tax assessment was inherently flawed, and by finding that the City met its *prima facie* burden of establishing the reassessment's validity, which was not overcome by Taxpayer's evidence.  Discerning no error, we affirm.


## I. Background

        The City's Office of Property Assessment (OPA) assessed the Property value at $282,000 for Tax Years 2014 through 2017.  In 2018, OPA reassessed

commercial properties in the City, including the Property, which it valued at $420,500. Although Taxpayer did not appeal,[1] other commercial property owners and lessees challenged the City's reassessment in *Duffield House Associates, L.P. v. City of Philadelphia* (C.P. Philadelphia, Docket Nos. 170901536, 170902005, 170903155, 170903156, 170903464, 170903473, 170903726, 171000437, 171101838, 171202872, 180104365, 180105379, 180400, filed September 25, 2019) (*Duffield House I*), *aff'd in part and vacated in part*, 260 A.3d 329 (Pa. Cmwlth. 2021) (*Duffield House II*) (collectively, *Duffield House*). In *Duffield House I*, the challengers claimed that the City's selective tax reassessment of only commercial properties, while applying base-year values for residential properties, violated the Uniformity Clause of the Pennsylvania Constitution, Pa. Const. art. VIII, §1.[2] The trial court agreed and concluded that the City's 2018 reassessment violated the Uniformity Clause by specifically targeting commercial properties for reassessment. *Duffield House I*, slip op. at 2. As a remedy, the trial court invalidated the 2018 Tax Year assessments, reinstated the 2017 Tax Year assessments for the 2018 Tax Year, and ordered the City to refund the plaintiff taxpayers the difference

---

[1] At argument, counsel for Taxpayer suggested that the 2018 Tax Year assessment was properly before us. However, Taxpayer was not a party to *Duffield House* and did not challenge the 2018 Tax Year. Taxpayer only appealed the 2019 Tax Year reassessment, which is the proper subject of this appeal. *See* Reproduced Record (R.R.) at 85a.

[2] The Uniformity Clause requires that all taxes be imposed uniformly and without discrimination and provides: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under the general laws." Pa. Const. art. VIII, §1.

between the stricken assessments and the reinstated assessments, with interest. *Id.* at 33-35.

While litigation in *Duffield House I* was proceeding, OPA performed a countywide reassessment of all properties in the City, both residential and commercial, including the Property for Tax Year 2019. The City determined that the certified market value of the Property for Tax Year 2019 was $420,100 ($400 less than the 2018 assessment). This reassessed value remained the same for Tax Years 2020 through 2022 and increased to $459,100 for Tax Years 2023 and 2024.

Taxpayer appealed the reassessed value of the Property for Tax Year 2019 to the Board.[3] Reproduced Record (R.R.) at 85a. Following a hearing, the Board denied the appeal by decision dated November 19, 2019. Taxpayer appealed the decision to the trial court, which heard the appeal *de novo*. Taxpayer also filed a motion for summary judgment asserting that the trial court's decision in *Duffield House I* controlled. More particularly, Taxpayer argued that the City's 2019 Tax Year reassessment value was derived using the same flawed methodology as the 2018 Tax Year, which was invalidated in *Duffield House I*. Taxpayer argued that the same remedy reached in *Duffield House* – invalidation of the 2019 reassessment and reinstatement of the 2017 tax assessment – should be applied here. The trial court denied the motion because *Duffield House I* had been appealed to this Court.

In August 2023, the trial court conducted a bench trial, taking evidence from both sides and hearing argument. The City presented the testimony of James Aros, OPA's Chief Assessment Officer (Chief Assessment Officer), as the custodian

---

[3] The appeals encompass the original year plus all subsequent years that accrued during the pendency of the appeal. *See* Section 518.1(b) of the General County Assessment Law, Act of May 22, 1933, P.L. 853, added by the Act of December 28, 1955, P.L. 917, *as amended*, 72 P.S. §5050-518.1(b); *Chartiers Valley School District v. Board of Property Assessment*, 622 A.2d 420, 429 (Pa. Cmwlth. 1993).

of tax records, who read the certified market values of the Property for Tax Years 2019 through 2024 into the record. Taxpayer challenged the assessed value by presenting the lay testimony of Executor and Executor's mother, Mary Neri, who serves as a co-administrator of the Estate. Taxpayer's witnesses both testified regarding the character of the Property, which is presently leased to a daycare business. Executor additionally testified regarding the deteriorating condition of the surrounding Frankford neighborhood, a purchase offer of $250,000 received from a former tenant, and the assessed value of the Property for Tax Year 2017. Executor testified that any repairs or improvements made to the Property were insubstantial. In his opinion, the Property value could not have increased from the 2017 assessed value to the current reassessed values given the neighborhood's changing conditions, including an increase in vacant properties. On cross-examination, Executor admitted he never had the Property appraised. Taxpayer offered no expert testimony as to valuation.

The trial court rejected Taxpayer's reliance on *Duffield House* that the City used a flawed methodology in reassessing the Property's value. The trial court explained that the *Duffield House* taxpayers challenged the fact that they were targeted for reassessment in violation of the Uniformity Clause; they did not challenge "'the erroneous valuation of their reassessments.'" *Duffield House II*, 260 A.3d at 340 (quoting *Duffield House I*, slip op. at 33.). In *Duffield House II*, this Court concluded that the *manner* in which the City conducted reassessment for Tax Year 2018 was unconstitutional, *not the methodology* or the values of the assessment themselves, because the City targeted only commercial properties for reassessment. In contrast, in Tax Year 2019, the City performed a countywide reassessment of both commercial and residential properties, thereby remedying the Uniformity Clause

4

defect present in *Duffield House*. Thus, the trial court concluded that *Duffield House* did not require the invalidation of Tax Years 2019-2024.

The trial court then found that the City made a *prima facie* case for the validity of the reassessment by presenting the assessment records into evidence. Once a *prima facie* case was made, the burden shifted to Taxpayer to prove that the valuation was incorrect. To that end, Taxpayer offered no expert valuation evidence. The trial court found that the lay opinion given by Taxpayer's witnesses regarding the value of the Property was not enough to meet the burden of overcoming the *prima facie* validity of the assessment. By order dated August 3, 2023, the trial court denied Taxpayer's appeal for Tax Years 2019-2024. This appeal now follows.[4]

## II. Issues

In this appeal, Taxpayer contends that the trial court erred by finding that the appeal was not governed by *Duffield House*. Taxpayer also argues that the trial court erred in finding that the City's assessment records, which were based solely upon the results of "ratio studies" conducted by the City, constituted assessments for purposes of taxation. Taxpayer disputes that the City established a *prima facie* case for the validity of its assessment records when those values were derived using the same methodology that was found to be "seriously flawed," "unreliable," and unsuitable for determining the value of a specific property for assessment purposes. *Duffield House II*, 260 A.3d at 345 (quoting *Duffield House I*, slip op. at 28). Finally, Taxpayer avers that the trial court erred in holding that the *prima facie* case purportedly made by the City was not overcome by Taxpayer's

---

[4] Our review of tax assessment appeals is limited to determining whether errors of law were committed, an abuse of discretion occurred, or constitutional rights were violated. *Green v. Schuylkill County Board of Assessment Appeals*, 772 A.2d 419, 426 (Pa. 2001).

evidence especially in light of the lower burden of persuasion afforded to Taxpayer because of the City's failure to rebut Taxpayer's evidence.

### III. Discussion
### A. *Duffield House*

First, Taxpayer contends that the trial court erred in finding that *Duffield House* was inapplicable to this case. In *Duffield House I*, the trial court invalidated the 2018 Tax Year assessments for commercial properties in the City because the values used were unreliable and nonuniform. According to Taxpayer, the assessment records were defective because the City used a flawed ratio study methodology. As a remedy, the trial court in *Duffield House I* ordered the City to reset the assessments to the 2017 Tax Year. In *Duffield House II*, this Court affirmed. Taxpayer contends that the City used the same flawed assessment methodology for Tax Years 2019 through 2024 as it did for Tax Year 2018, which was invalidated. Therefore, Taxpayer argues that the trial court erred by not invalidating the Property's assessments for Tax Years 2018-2024 and resetting the assessment to the 2017 Tax Year based on the *Duffield House* cases.

In Tax Year 2018, the City reassessed 41,730 commercial properties in the City at current market values, but did not reassess 538,380 residential properties, leaving their assessments at 2017 Tax Year values and imposing no additional taxes on those properties. *Duffield House II*, 260 A.3d at 336. The taxpayers in *Duffield House*, who were the owners and lessees of approximately 700 commercial properties in the City, brought an equity action claiming that the City's strategy of reassessing only commercial properties in Tax Year 2018 was an unconstitutional, intentional, and systematic reassessment of their commercial properties. *Id*. Specifically, they claimed that the City's conduct violated the Uniformity Clause,

6

which prohibits treating different property subclassifications, *i.e.*, commercial property and residential property, in a different manner. *Id.* The *Duffield House* taxpayers did not challenge the validity of the 2018 reassessments themselves or the use of the ratio study methodology to calculate the reassessments. *Id.* at 340.

In *Duffield House*, the City defended that there was no need to reassess residential properties for the 2018 Tax Year. The City reassessed only commercial properties pointing to ratio studies that indicated that the assessed values of residential properties were close to market values whereas the commercial properties were "grossly underassessed." *Duffield House II*, 260 A.3d at 344. The trial court rejected the City's defense and found that the methodology of selecting only commercial properties for reassessment was flawed and unconstitutional. *Id.* The taxpayers presented substantial evidence by way of expert testimony that the residential properties were similarly undervalued and that there was no evidence of gross disparity with the commercial assessments as the City alleged. *Id.* The trial court's finding was further supported by the 2019 Tax Year reassessments, which "resulted in a sizeable increase in the assessments of residential properties." *Id.* at 344-45.

Ultimately, the trial court in *Duffield House I* determined that the City unconstitutionally targeted commercial properties for reassessment in violation of the Uniformity Clause. The trial court ordered OPA to reset the assessed values of the subject properties to their Tax Year 2017 values and to return to the taxpayers the difference between their 2018 Tax Year tax burden and what they would have paid had their 2017 Tax Year values been applied in Tax Year 2018. From this decision, the City appealed to this Court, which ultimately affirmed. *Duffield House II*, 260 A.3d at 349.

This Court held that "[t]he Uniformity Clause precludes a taxing jurisdiction from treating similarly situated taxpayers differently." *Duffield House II*, 260 A.3d at 341. "To satisfy the uniformity requirement, 'all property must be taxed uniformly, with the same ratio of the assessed value to actual value applied throughout the taxing jurisdiction.'" *Id*. (quoting *Clifton v. Allegheny County*, 969 A.2d 1197, 1224 (Pa. 2009)). We concluded that the City's decision to target certain subclassifications of property for reassessment, while leaving other subclassifications of property alone, violated the Uniformity Clause. *Id*. at 349.[5]

Here, contrary to Taxpayer's position, neither the trial court nor this Court held that the valuations themselves were flawed or defective in *Duffield House*. Rather, the constitutional flaw was the manner in which the City targeted only commercial properties for reassessment, not the methodology itself. *Duffield House II*, 260 A.3d at 347. The City used the ratio studies as a tool to justify its disparate treatment between commercial and residential properties, but the evidence showed that the residential properties were similarly underassessed. For the Tax Years in question here, 2019 through 2024, the City did not just reassess one type of property as it had in 2018. The City reassessed *all* properties – both commercial and residential – thereby remedying the constitutional infirmity found in *Duffield House*.

---

[5] In the process, we distinguished *Kennett Consolidated School District v. Chester County Board of Assessment Appeals*, 228 A.3d 29 (Pa. Cmwlth. 2020). In *Kennett*, a taxpayer similarly challenged a taxing authority's tax assessment of its property on the grounds that it violated the Uniformity Clause. The taxing authority set a monetary threshold of a $1 million underassessment, which affected only commercial property assessments. We concluded that the appeal program was constitutional because it was not based on type of property but on the amount of the underassessment. The fact that the program's implementation resulted in an assessment appeal of only commercial properties did not establish a *per se* violation of the Uniformity Clause. *Duffield House II*, 260 A.3d at 343-44.

8

Because there is no Uniformity Clause violation at issue, *Duffield House II* does not compel the reset requested.

## B. Ratio Studies

Next, Taxpayer argues that the trial court erred in finding that the City's assessment records were presumptively valid where the City used the same flawed ratio studies methodology as they did in 2018. In *Duffield House*, the courts described the ratio studies methodology as "seriously flawed" and "unreliable." *Duffield House II*, 260 A.3d at 345 (quoting *Duffield House I*, slip op. at 28). Consequently, Taxpayer argues that the ratio studies could not be used to value specific parcels for tax assessments.

"Ratio studies are used to compare the market value placed on a property to the sale price. . . . [R]atio studies . . . '[examine] the relationship between price and value.'" *Duffield House II*, 260 A.3d at 10 n.10 (quoting *Duffield House I*, slip op. at 26). According to the International Association of Assessing Officers (IAAO) standard on ratio studies, a ratio study "is used as a generic term for sales-based studies designed to evaluate appraisal performance." IAAO, Standard on Ratio Studies (2013), at 7.[6] A ratio study compares properties that have recently sold to their assessed values as an indicator of whether the assessed values are representative. *Id*. at 17, 32.

In *Duffield House I*, the trial court found that

34. Ratio studies . . . are a diagnostic tool primarily. They do not involve looking at the value of any specific property.

_____

[6] *See* https://www.iaao.org/wp-content/uploads/Standard_on_Ratio_Studies.pdf (last visited June 30, 2025).

9

36. A ratio study is not, and cannot be, used to value specific properties, and it does not assess whether any particular property is overvalued, undervalued, or right on target.

37. Conducting a ratio study is not a substitute for determining the actual market value of any property, or of all properties.

R.R. at 38a-39a (*Trial Court Decree*, 7/17/19, Finding of Fact (F.F.) Nos. 34, 36-37). The trial court took issue with OPA's "process of validating sales of residential properties" based on the ratio studies. *Id*. at 40a (F.F. Nos. 68-69). Ultimately, the trial court opined that the "ratio studies concerning residential properties were "unreliable," "seriously flawed," and "did not properly ascertain the quality of residential and commercial assessments in the City . . . ." *Duffield House I*, slip op. at 27-28. According to expert testimony, residential properties were similarly underassessed when compared to their market value, yet the City did not reassess them.

On appeal, we agreed that "OPA's strategy of using ratio studies to identify the most non-uniform sub[]classification, and then focusing on just that sub[]classification," amounted to a violation of the Uniformity Clause. *Duffield House II*, 260 A.2d at 341. Although the City argued that "it chose to reassess [the taxpayers'] properties not because of their commercial nature, but because OPA's ratio studies showed that commercial properties were the 'most underassessed' properties in the City and had been 'grossly underassessed' for several years," this claim was "belied by the record." *Id*. at 344. "Contrary to the City's contention, the evidence did not establish, nor did the [t]rial [c]ourt find, that commercial properties

10

were the most underassessed properties in the City. Rather, the [t]rial [c]ourt found that residential properties were [also] substantially underassessed." *Id*.

In Tax Year 2018, the City improperly used the ratio study methodology to justify selectively reassessing certain property subclassifications. In Tax Year 2019, the City remedied the constitutional violation by reassessing both residential and commercial properties at current market values. Thus, the trial court did not err in finding that the City's use of the ratio study to reassess all types of properties was not flawed or unconstitutional.

### C. *Prima Facie* Case

Next, Taxpayer contends that the trial court erred in determining that the City met its *prima facie* burden to support the validity of its tax assessment for the Property and improperly shifted the burden to Taxpayer to rebut the presumption. Taxpayer claims that the City improperly relied exclusively on the hearsay testimony of its Chief Assessment Officer, who simply "read into the record" the market values that were certified using the same discredited methodology that was used in *Duffield House II* as evidence of the market value of the Property for the Tax Years in question. Therefore, Taxpayer contends that the City did not make a *prima facie* case.

Tax assessment appeals are heard by the trial court *de novo* and the burden of proof is well established. *Green v. Schuylkill County Board of Assessment Appeals*, 772 A.2d 419, 425-26 (Pa. 2001); *Deitch Co. v. Board of Property Assessment*, 209 A.2d 397, 402 (Pa. 1965). As our Supreme Court has explained:

> The procedure requires that the taxing authority first present its assessment record into evidence. Such presentation makes out a *prima facie* case for the validity of the assessment in the sense that it fixes the time when

11

the burden of coming forward with evidence shifts to the taxpayer. If the taxpayer fails to respond with credible, relevant evidence, then the taxing body prevails. But once the taxpayer produces sufficient proof to overcome its initially allotted status, the *prima facie* significance of the Board's assessment figure has served its procedural purpose, and its value as an evidentiary devise is ended. Thereafter, such record, of itself, loses the weight previously accorded to it and may not then influence the court's determination of the assessment's correctness.

Of course, the taxpayer still carries the burden of persuading the court of the merits of his appeal, but that burden is not increased by the presence of the assessment record in evidence.

Of course, the taxing authority always has the right to rebut the owner's evidence and in such a case the weight to be given to all the evidence is always for the court to determine. The taxing authority cannot, however, rely solely on its assessment record in the face of countervailing evidence unless it is willing to run the risk of having the owner's proof believed by the court.

*Deitch*, 209 A.2d at 402 (citations and footnote omitted). A taxing authority meets its initial burden by presenting its assessment record, without consideration of the values it contains. *Id*.

Here, the City met its *prima facie* burden of the assessment's validity by presenting its certified assessment record for the Property into evidence through the testimony of the Chief Assessment Officer, as the custodian of records. R.R. at 305a. Although the Chief Assessment Officer was not an expert on valuation and had not personally visited the Property, *id*. at 305a-07a, such expertise was not required for the City to meet its initial burden of presenting the official assessment records into evidence. *See Herzog v. McKean County Board of Assessment Appeals*, 14 A.3d 193, 200 (Pa. Cmwlth. 2011). His expertise, or lack thereof, would become

12

a factor only if the validity of the assessment was successfully rebutted by Taxpayer, which we address next.

### D. Taxpayer's Rebuttal Evidence

Finally, Taxpayer maintains that the trial court erred when it determined that Taxpayer did not successfully rebut the City's *prima facie* case. According to Taxpayer, it produced competent, credible, and reliable testimony showing that the Property's assessments were inaccurate. The trial court should have afforded sufficient weight to Taxpayer's uncontradicted evidence and revised the assessments accordingly.

Once a taxing authority satisfies its initial burden of presenting its assessment record into evidence, the burden shifts to the challenging taxpayer to respond, "with *credible, relevant* evidence to persuade the court of the merits of his position." *Herzog*, 14 A.3d at 200 (emphasis in original). "[T]he taxpayer must . . . offer proof with respect to the actual or market value of the property." *Deitch*, 209 A.2d at 402. Taxpayers can prove actual value by offering, for example, evidence of recent sales prices of comparable properties, recent arm's length offers to buy the subject property, or an expert appraisal. *Appeal of Park Drive Manor*, 110 A.2d 392, 394 (Pa. 1955); *Smith v. Carbon County Board of Assessment Appeals*, 10 A.3d 393, 401 (Pa. Cmwlth. 2010). Indeed, Section 402(a) of the General County Assessment Law[7] requires consideration of the sales comparison, income, and cost approaches to develop fair market value.

Courts are not required to accept a taxpayer's evidence as sufficient to overcome an assessment record merely because it is unrebutted, even where that evidence is somewhat credible. *Green*, 772 A.2d at 424. "Estimates of value that

---

[7] Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §5020-402(a).

are speculative and conjectural are not competent." *Expressway 95 Business Center, LP v. Bucks County Board of Assessment*, 921 A.2d 70, 76 (Pa. Cmwlth. 2007).

When considering a taxpayer's evidence that responds to the taxing authority's assessment, "[i]t is beyond peradventure that the trial court, sitting as the fact[]finder, is free to believe all, part or none of the evidence, to make all credibility determinations, and to resolve all conflicts in the evidence." *In re Appeal of the Board of Auditors of McKean Township/2017 Meeting*, 201 A.3d 252, 262 (Pa. Cmwlth. 2018). "[T]he trial court's findings of fact are entitled to great weight and will be reversed only for clear error." *Green*, 772 A.2d at 426. This Court "cannot upset the trial court's credibility determinations or reweigh the evidence to make findings contrary to the trial court." *Auditors of McKean Township*, 201 A.3d at 263.

In *Appeal of Rieck Ice Cream Co.*, 209 A.2d 383 (Pa. 1965), the taxing authority presented its assessment record into evidence and rested. To rebut the validity of the assessment, the taxpayer produced testimony of an engineer and two real estate appraisers regarding the nature and value of the property. *Id.* at 384. The expert witnesses opined that the property had not been substantially improved between the prior and current assessments. *Id.* On this basis, the taxpayer argued that there was no support for the increased valuation. *Id.* The trial court, relying on the absence of any physical change to the property, determined that the prior assessment was *res judicata* on the question of fair market value in the current assessment. *Id.* On appeal, the Supreme Court disagreed and opined that, although "a prior assessment may be admissible for some purposes, . . . it cannot be considered to be *res judicata* of the current fair market value." *Id.* The Supreme Court vacated the decision and remanded for further proceedings to determine

14

whether the assessment exceeded the market value of the property or lacked uniformity. *Id*. at 387.

Here, Taxpayer offered testimony that the Property was previously assessed at $282,200 in Tax Year 2017, R.R. at 298a; Executor believed that the Property was worth $250,000 when his father died, *id*. at 297a; in 2005, Taxpayer received, but rejected, an offer of $250,000 for the Property, *id*. at 304a; since then, the neighborhood has deteriorated and declined, *id*. at 294a; and the Property was not substantially improved between 2017 and 2019, *id*. at 299a. Given these factors, Taxpayer argued that it makes no sense for the Property's value to increase from $282,200 in Tax Year 2017 to $420,100 in Tax Year 2019.

However, other than Taxpayer's lay opinion regarding the neighborhood and the Property's value, Taxpayer offered no evidence regarding specific valuation for the Property or recent sales of comparable properties. Taxpayer offered no expert appraisals. Taxpayer failed to consider other factors that may account for increased valuation, such as real estate market trends.

The trial court found Taxpayer's evidence was "not sufficient to discredit the validity of the current assessment." Trial Court Opinion, 11/1/2022, at 13. The trial court found that "neither the prior assessment nor the prior offer to purchase are dispositive of the Property's fair market value." *Id*. A "prior valuation of a property does not control future valuations." *Id*. The trial court concluded that "[a]n increase in valuation that operates against expectation, such as where a property is unimproved, as in *Rieck*, or where the neighborhood has deteriorated, as here, is not sufficient to discredit the current assessment." *Id*. Upon review, the trial court gave adequate reasons for rejecting Taxpayer's rebuttal evidence and did not abuse its discretion in this regard.

15

## IV. Conclusion

Upon review, we affirm the trial court's order.


_____
MICHAEL H. WOJCIK, Judge


16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Estate of Carmen Neri :
                                          : No. 895 C.D. 2023
Appeal of: Estate of Carmen Neri :
and Michael Neri :

**O R D E R**

AND NOW, this 17th day of July, 2025, the order of the Philadelphia County Court of Common Pleas, dated August 3, 2023, is **AFFIRMED**.

_____
MICHAEL H. WOJCIK, Judge